IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HOMETOWN AMERICA, LLC;                    )
HOMETOWN AMERICA MANAGEMENT,    )
LLC; HOMETOWN OAK POINT I, LLC;       )
HOMETOWN OAK POINT II, LLC,              )          Civil Action No. _____
                                                             )
    Plaintiffs,                                      )
v.                                                          )
                                                             )          **COMPLAINT**
THE TOWN OF MIDDLEBOROUGH,           )
MASSACHUSETTS; BOARD OF HEALTH    )
OF THE TOWN OF MIDDLEBOROUGH,      )
MASSACHUSETTS; BOARD OF SELECT-    )
MEN OF THE TOWN OF MIDDLE-           )
BOROUGH, MASSACHUSETTS; LEILANI     )
DALPE, in her official capacity as Chairman  )
and member of the Board of Selectmen of the )
Town of Middleborough, Massachusetts;       )
ARTHUR BATTISTINI, in his official capacity )
as Vice-Chairman and member of the Board of )
Selectmen of the Town of Middleborough,     )
Massachusetts; NATHAN DEMERS, in his      )
official capacity as member of the Board of    )
Selectmen of the Town of Middleborough,     )
Massachusetts; MARK GERMAIN, in            )
his official capacity as member of the Board of )
Selectmen of the Town of Middleborough,     )
Massachusetts; NEIL ROSENTHAL, in his     )
official capacity as member of the Board of    )
Selectmen of the Town of Middleborough,     )
Massachusetts,                                      )
                                                             )
    Defendants.                                     )
_____)

## INTRODUCTION

    1.    Plaintiffs have been sued in this Court in a purported class action that seeks, *inter*

*alia*, to represent residents of Oak Point, a manufactured home community in the Town of

Middleborough ("*Craw* purported class action"). Not satisfied with the progress of that civil

action, the Town of Middleborough has resorted to both unconstitutional and invalid means. At base, the Town of Middleborough is unconstitutionally exacting from Plaintiffs a Review Fee as punishment for not resolving the *Craw* purported class action. To do so, the Town of Middleborough has conditioned the renewal of Plaintiffs' annual licenses to operate the Oak Point Community on payment by Plaintiffs of the monetary punishment for the hiring of a third-party expert. Yet, the Town of Middleborough's position is pure pretext because Plaintiffs' annual licenses are not even up for renewal right now. What's more, the Town of Middleborough demanded that Hometown pay the monetary punishment in order to fund a third-party to review existing permits that the Town of Middleborough cannot constitutionally reopen. And, even under Massachusetts state law, the Town of Middleborough acting through its Board of Health lacks the authority to hire third-party consultants at Plaintiffs' expense. When Plaintiffs attempted to appeal these actions under state law, the Town would not even let Plaintiffs make a public statement on their own behalf. Plaintiffs are left with no choice but to file this lawsuit.

## FEDERAL CLAIMS

2.      This constitutional challenge seeks to vindicate the constitutionally protected property rights of Plaintiffs Hometown America, LLC ("Hometown America"), Hometown America Management, LLC ("Hometown America Management"), Hometown Oak Point I, LLC ("Hometown Oak Point I"), and Hometown Oak Point II, LLC ("Hometown Oak Point II") (collectively, the "Hometown Plaintiffs").

3.      Each of the Hometown Plaintiffs owns, operates, and/or manages the Oak Point manufactured home community ("Oak Point Community"), and the land on which it sits, located in Middleborough, Massachusetts.

4.      Since 1992, the Hometown Plaintiffs and/or their predecessors have built seven different phases at the Oak Point Community, and received over **50** different permits, Certificates of Completion, Decisions for Definitive Site Plan Approval, licenses, and/or Orders of Conditions (collectively, "Permits") from a variety of governmental entities.  The Middleborough Planning Board issued many of those Permits, some of which detailed the required stormwater management for each phase of the Oak Point Community construction, and others of which confirmed the construction's compliance with the Permits' stormwater management requirements.

5.      The Hometown Plaintiffs have relied substantially on, and to enormous expense, and have a constitutional right to, these Permits issued by the Middleborough Planning Board and other governmental entities over the last 28 years.

6.      Defendants (the Town of Middleborough, the Middleborough Board of Selectmen, the Middleborough Board of Selectmen acting as the Board of Health, and the boards' members, collectively, the "Middleborough Defendants") now question the Middleborough Planning Board issuing these Permits.  In response to a statement that the Permits, and the stormwater management detailed thereunder, are within the jurisdiction of the Middleborough Planning Board, Middleborough Board of Selectman Chairman Dalpe stated at  a recent September 14, 2020 hearing:  "[I]t wouldn't have gotten to the Board of Selectmen, the Board of Health if all of that had worked."

7.      The Middleborough Defendants, with no jurisdiction over the issue, are now extortionately demanding that the Hometown Plaintiffs pay for a *new* third-party engineer again to review **all** of those Permits, and again to review the Oak Point Community's compliance with those Permits and the Massachusetts stormwater management standards as applied by the

Planning Board through those Permits over the past 28 years (the "Do Over").  One Middleborough Board of Selectman stated the obvious: "**they [the Middleborough Planning Board] approved all these things before we were here**."  Unhappy with the terms and conditions, including the site-specific stormwater management and drainage requirements, established by the Middleborough Planning Board in approving the Permits over the course of the past 28 years, the Middleborough Defendants want the Do Over, and they want the Hometown Plaintiffs to pay for it.

8.     The mandated Do Over's unconstitutional nature is further demonstrated by the Middleborough Defendants' threats and conditions.  The Middleborough Defendants have stated that denying renewal of the Hometown Plaintiffs' annual licenses to operate the Oak Point Community, and thus denying the Hometown Plaintiffs their livelihood, is the remedy for the Hometown Plaintiffs' failure to pay the "Review Fee" paying for the Do Over.

9.     Said licenses are expiring on December 31, 2020, and thus their renewal is not even currently pending.

10.     The Middleborough Defendants' counsel has also stated that if the Hometown Plaintiffs settle the *Craw* purported class action in a manner acceptable to the plaintiffs in that case, then the Do Over, and the Review Fee paying for it, will be rendered unnecessary and could be avoided.

11.     The Hometown Plaintiffs seek declaratory and injunctive relief protecting themselves from these extortionate demands and deliberate deprivations of their constitutionally-protected property rights and abuses of power by the Town of Middleborough, Massachusetts and certain of its Boards, and certain of its current public officials.

12.     This case is extremely important because it involves an unprecedented and unconstitutional abuse of municipal powers.  It is not a simple municipal land-use case where a license or permit application for a *new* project is at issue.  The Hometown Plaintiffs have no *pending* license, permit, or new project.  Instead, the Middleborough Defendants:  (a) want a Do Over by a third-party engineering firm of essential Permits granted by a governmental entity, including their own Middleborough Planning Board, over the last 28 years; (b) are requiring the Hometown Plaintiffs to pay for that Do Over; (c) are stating that their denial of the Hometown Plaintiffs' annual license renewal is their remedy for the Hometown Plaintiffs' failure to pay the Review Fee paying for the Do Over; and (d) are using that Do Over Review Fee as an extortionate demand to force the Hometown Plaintiffs to settle a separate purported class action on terms acceptable to the plaintiff in that lawsuit.

13.     Backed into a corner and faced with the loss of livelihood from the denial of their licenses to operate the Oak Point Community if they did not meet the Middleborough Defendants' extortionate demands, the Hometown Plaintiffs paid under protest the $16,590 Review Fee demanded by the Town for the Do Over on September 24, 2020.

**PENDENT STATE CLAIMS**

14.     The Hometown Plaintiffs challenge the validity of both (a) the "Town of Middleborough Board of Health Rule Regarding Consultant Fees," which was adopted by the Middleborough Board of Selectmen, acting in its capacity as the Board of Health, on June 29, 2020, pursuant to M.G.L. c. 44, §53G and M.G.L. c. 111, §31 (the "Consultant Fee Rule"), and (b) the July 27, 2020 order, issued pursuant to the Consultant Fee Rule, requiring the Hometown Plaintiffs to pay the fees of the third-party engineering firm the Middleborough Defendants have selected to provide consulting and inspection services with respect to the Oak Point Community (the "Fee Order").

15.     The Consultant Fee Rule and Fee Order are invalid because the Board of Health exceeded its legal authority in several respects when it adopted the rule and issued the fee order, as follows: (a) neither M.G.L. c. 44, §53G nor M.G.L. c. 111, §31 authorizes local boards of health to impose fees for assistance provided to the board by consultants; (b) the scope of work on which the Fee Order is based exceeds the scope of the Board of Health's legal authority and jurisdiction with respect to the Oak Point Community; and (c) the scope of work on which the Fee Order is based impermissibly delegates nondelegable government duties to a private third-party.

16.     The Hometown Plaintiffs seek declaratory and injunctive relief protecting themselves from the invalid Consultant Fee Rule and Fee Order and the abuses of authority by the Middleborough Defendants.

17.     The Hometown Plaintiffs also present a claim in the nature of certiorari, pursuant to M.G.L. c. 249, § 4, to correct substantial errors in certain decisions of the Board of Health that are not otherwise reviewable by motion or by appeal, and to provide associated relief, in order to protect the Hometown Plaintiffs' substantial rights and prevent injustice.

18.     By the certiorari claim, the Hometown Plaintiffs seek the correction of substantial errors of law in the Board of Health's July 27, 2020 decision to (a) appoint and engage the firm of Tetra Tech, Inc. ("Tetra Tech") as the Board of Health's consultant, for purposes of performing services in "Phase I" of a four-phase scope of work concerning the Oak Point Community; and (b) require, through the Fee Order, the Hometown Plaintiffs to finance Tetra Tech's Phase I work by making payment to the Town of Middleborough, in the amount of $16,590, pursuant to the recently-adopted Consultant Fee Rule and actions taken upon votes of the Middleborough Board of Health and Board of Selectmen.

19.     The Hometown Plaintiffs allege that the Board of Health's decision reflects substantial error in at least three fundamental respects: (a) there is no pending application before the Board of Health that could give rise to the Fee Order; (b) the fee the Hometown Plaintiffs have been ordered to pay is unreasonable because the scope of work on which the fee is based is unreasonable, unjustified, and duplicative of third-party consulting work previously performed for Middleborough authorities and already paid for by the Hometown Plaintiffs and/or their predecessors; and (c) the team of Tetra Tech professionals tasked with performing the specified Phase I services for the Board of Health does not possess the essential qualifications to determine whether the Oak Point Community is operating in compliance with any requirement over which the Board of Health has authority and jurisdiction with respect to Oak Point.

20.     The Hometown Plaintiffs request that the Court vacate the Board of Health's decision to appoint and engage Tetra Tech and to require, through the Fee Order, the Hometown Plaintiffs to finance Tetra Tech's work.  The Hometown Plaintiffs further request that the Court award the Hometown Plaintiffs the $16,590 they have paid to the Town under protest.

21.     As an alternative to their certiorari claim, should the Court find certiorari review of the Board of Health's decisions unavailable, the Hometown Plaintiffs' present an appeal of the Board of Health's decisions pursuant to M.G.L. c. 140, §32K on the same grounds that form the basis of the Hometown Plaintiffs' declaratory judgment and certiorari claims.

**JURISDICTION AND VENUE**

22.     The Hometown Plaintiffs bring this civil action making constitutional claims pursuant to the "unconstitutional conditions doctrine," the "monetary exactions" doctrine, and the Takings Clause of the United States Constitution; the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; the Excessive Fines

Clause of the Eighth Amendment to the United States Constitution and the Massachusetts Declaration of Rights; Art I, §10 of the United States Constitution prohibiting unlawful Bills of Attainder; 42 U.S.C. §1983; the Declaratory Judgment Act, 28 U.S.C. §2201; and 42 U.S.C. §1988.

23.     The Hometown Plaintiffs seek declaratory and injunctive relief from the Middleborough Defendants' actions violating the Hometown Plaintiffs' constitutional rights. Those unconstitutional actions, described in more detail herein, are occurring in Middleborough, Massachusetts, and arise out of and relate to the Oak Point Community, which is located in Middleborough, Massachusetts.

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343, and 42 U.S.C. §1983.

25.     This Court has supplemental jurisdiction over the state causes of action under 28 U.S.C. §1367.

26.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).  The Middleborough Defendants' actions giving rise to the Hometown Plaintiffs' claims have taken place in Middleborough, Massachusetts.  The dispute also concerns real property situated in Middleborough, Massachusetts.  The Middleborough Defendants reside in this judicial district. Middleborough, Massachusetts is within the jurisdiction of the United States District Court for the District of Massachusetts.

## **PARTIES**

27.     Hometown America is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Hometown America is the sole member of Hometown America Management.

28.     Hometown America Management is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Hometown America Management manages the Oak Point Community.  Hometown America Management is the sole member of Hometown Communities, LLC, a Maryland limited liability company.  Hometown Communities, LLC is the sole general partner of Hometown Communities L.P., a Maryland limited partnership.  Hometown Communities L.P is the sole member of each of Hometown Oak Point I and Hometown Oak Point II.

29.     Hometown Oak Point I is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Hometown Oak Point I is the joint fee owner, along with Hometown Oak Point II, of the Oak Point Community, situated in Middleborough, Massachusetts, and more specifically the property located at MAP 022, LOT 1155, MAP 022, LOT 2175, MAP 005, LOT 4819, MAP 006, LOT 2637, MAP 006, LOT 3570, and MAP 013, LOT 4716.  Hometown Oak Point I leases some portions of the land it owns to some of the 978 manufactured homeowners in the Oak Point Community.

30.     Hometown Oak Point II is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Hometown Oak Point II is the joint fee owner, along with Hometown Oak Point I, of the Oak Point Community, situated in Middleborough, Massachusetts, and more specifically the property located at MAP 006, LOT 5715, MAP 005, LOT 1725, and MAP 005, LOT 5665.  Hometown Oak Point II leases some portions of the land it owns, as individual "home sites", to the owners of the 978 manufactured homes in the Oak Point Community.

31.     The Town of Middleborough (the "Town") is a municipality organized and/or established under the laws of the Commonwealth of Massachusetts, with its principal office at 10

Nickerson Avenue, Middleborough, Massachusetts 02346.  The Town includes a number of

boards, commissions, departments, and other bodies with regulatory and policy-making powers

in the Town, including without limitation the Board of Selectmen, the Board of Selectmen acting

as the Board of Health, the Planning Board, and the Conservation Commission.

32.     The Board of Selectmen of Middleborough ("Board of Selectmen") is a duly-

constituted and elected board of the Town, with its principal office at 10 Nickerson Avenue, 1st

Floor, Middleborough, Massachusetts 02346.

33.     The Board of Health of Middleborough ("Board of Health") is a duly-constituted

board of health of the Town, with its principal office at 10 Nickerson Avenue, 1st Floor,

Middleborough, Massachusetts 02346.  In Middleborough, the Board of Selectmen of

Middleborough acts as the Board of Health of Middleborough.

34.     Leilani Dalpe ("Dalpe") is the Chairman and a member of the Board of Selectmen

of the Town of Middleborough, and, through that membership, is also a member of the Board of

Health.  She is sued in this official capacity only.  She is a citizen of Massachusetts residing in

the Town of Middleborough.

35.     Arthur Battistini ("Battistini") is the Vice-Chairman and a member of the Board

of Selectmen of the Town of Middleborough, and, through that membership, is also a member of

the Board of Health.  He is sued in this official capacity only.  He is a citizen of Massachusetts

residing in the Town of Middleborough.

36.     Nathan Demers ("Demers") is a member of the Board of Selectmen of the Town

of Middleborough, and, through that membership, is also a member of the Board of Health.  He

is sued in this official capacity only.  He is a citizen of Massachusetts residing in the Town of

Middleborough.  Upon information and belief, Demers is also the owner of Demers Construction

Company, a general contracting business located in Middleborough.

37.     Mark Germain ("Germain") is a member of the Board of Selectmen of the Town

of Middleborough, and, through that membership, is also a member of the Board of Health.  He

is sued in this official capacity only.  He is a citizen of Massachusetts residing in the Town of

Middleborough.

38.     Neil Rosenthal ("Rosenthal") is a member of the Board of Selectmen of the Town

of Middleborough, and, through that membership, is also a member of the Board of Health.  He

is sued in this official capacity only.  He is a citizen of Massachusetts residing in the Town of

Middleborough.

39.     As members of the Board of Selectmen, Dalpe, Battistini, Demers, Germain, and

Rosenthal also act as the Board of Health.

## FACTUAL ALLEGATIONS

### Oak Point's Initial Development in 1992

40.     The White Oak Island Trust initially conceived of this "Oak Point" project,

formerly known as White Oak Island, which became the Oak Point Community.

41.     The Town of Middleborough Planning Board (the "Middleborough Planning

Board" or "Planning Board") is the designated Special Permit granting authority for adult mobile

home parks in Middleborough.

42.     The Middleborough Planning Board issued a Special Permit dated December 15,

1992, approving the Oak Point development (the "Special Permit").

43.     The Middleborough Planning Board issued the Special Permit after:  (a) Land

Graphics of Plymouth, Massachusetts (an engineering firm) prepared the site plan documents;

(b) the master plans accompanying the permit application provided for compliance with

stormwater management standards as implemented by the Massachusetts Department of Environmental Protection in effect at that time; (c) the applicant's engineer provided a comprehensive drainage analysis that outlined the construction process, so that construction would not cause any post-construction increases in the stormwater runoff rate; and (d) a peer review consultant, Atlantic Design Engineers of Sandwich, Massachusetts, working on behalf of the Town of Middleborough, confirmed that the design assumptions and calculations prepared by Land Graphics met regulatory requirements and standard engineering practice.

44. The Special Permit confirmed the Planning Board's acceptance of the master plan for the Oak Point Community, the affected acreage of the development, and the intended home construction and density.

45. The Special Permit requires the applicant developer to submit an application for Definitive Site Plan Approval at each sub-phase of the development.  The Definitive Site Plan application outlines in detail the location, layout, grading, and utility infrastructure for that phase of the project.

46. The Special Permit requires that a drainage analysis is submitted with each phase that shows conformity with the Special Permit but provides area specific information to show how the home sites are to be graded, stormwater conveyed, and the collection systems constructed to ensure compliance with regulations and no off-site impacts.

47. The Special Permit dictates the process for individual phase approval, which has remained the same since the issuance of the Special Permit in 1992:  (a) the applicant developer submits a Definitive Site Plan application to the Middleborough Planning Board; (b) the Middleborough Planning Board engages a qualified third-party engineering peer reviewer to assess the engineering aspects and advise the Planning Board on compliance; (c) the

Middleborough Planning Board holds a public meeting to provide opinion on the application;
(d) if necessary, the application is revised to address comments until a final approvable plan is
reached; (e) the final plan is approved at a public meeting with the Middleborough Planning
Board; (f) a record Proceedings and Decision and Lot release with Covenant provisions is
generated, endorsed by the Middleborough Planning Board, and recorded with the Registry of
Deeds; and (g) the phase is then released for construction.

### Oak Point Community Permits Subsequent to the 1992 Special Permit and Prior to Hometown's 2011 Acquisition of Oak Point

48.     Since 1992, the Middleborough Planning Board has amended and restated the
Special Permit four times, most recently in 2015, and the Oak Point Community has had seven
phases of construction approved by the Middleborough Planning Board and other governmental
entities, including the Middleborough Conservation Commission.

49.     Thus, the permitting approval process outlined by the original Special Permit has
occurred seven times during the last 28 years, with the Middleborough Planning Board and other
governmental entities issuing all necessary permit approvals.

50.     With the exception of Section 2 of Phase V, the first six phases of the Oak Point
Community were constructed by the original developer of the community and not by any of the
Hometown Plaintiffs.

51.     Phases I through VI of the Oak Point Community were constructed in the
following years and for the following numbers of manufactured home sites, or units:

Phase I – completed 2001 – 106 units

Phase II – completed 2003 – 120 units

Phase III – completed 2004 – 150 units

Phase IV – completed 2004 – 100 units

Phase V, Section 1 – completed 2004 -- 149 units

Phase V, Section 2 – completed 2018 – 6 units

Phase VI – completed 2004 – 150 units

52.      The original developer of the Oak Point Community largely completed construction of Phase VII, Section 1 of the Oak Point Community in 2009, and one of the Hometown Plaintiffs finalized construction of Phase VII, Section 1 in 2014 (50 units).

53.      One of the Hometown Plaintiffs completed Phase VII, Section 2 of Oak Point's construction in 2014 (134 units).

54.      The Middleborough Conservation Commission, as empowered to implement the Massachusetts Wetlands Protection Act, M.G.L. c. 131, §40,  and the regulations at 310 C.M.R. 10.00, *et seq.*, also exercised jurisdiction over matters relevant to flooding and drainage in connection with the development of the Oak Point Community.  If and to the extent that portions of any section of the community to be constructed impacted protected wetlands resource areas, the project fell under the jurisdiction of the Middleborough Conservation Commission and required the filing of a Notice of Intent to ensure the interests of the Wetlands Protection Act were maintained.

55.      The Middleborough Planning Board issued Certificates of Completion upon completion of construction of several phases, after as-built engineers' survey plans were prepared and submitted, deviations from record plans were noted, and a third party or Town engineer determined whether construction complied with the plans that had been approved, for the relevant development phase.  The mandated Do Over is requiring this same engineering review *again*.

56.     Through the years, the Oak Point Community owners/developers also received Permits from other governmental entities, including the Massachusetts Department of Environmental Protection, the U.S. Environmental Protection Agency, and the U.S. Army Corp of Engineers.

## HUD Promulgates Model Manufactured Home Installation Standards in 2008

57.     The Manufactured Housing Construction and Safety Standards Act, 42 U.S.C. §5401, *et seq.*, directs the Secretary of the United States Department of Housing and Urban Development ("HUD") to create uniform construction, installation, and safety standards for manufactured homes.  HUD did so effective October 20, 2008, with HUD's Model Manufactured Home Installation Standards, 24 CFR Part 3285, and HUD's Manufactured Housing Construction and Safety Standards, 24 CFR Part 3280 (collectively, the "HUD Uniform Standards").

58.     Since October 20, 2008, these HUD Uniform Standards have provided a comprehensive and uniform set of regulations regarding the construction and installation of new manufactured homes.

59.     Before October 20, 2008, HUD had no mandatory standards for installation of manufactured homes.

## Hometown Acquires the Oak Point Community and Its Land in 2011

60.     In 2011, Hometown Communities L.P. purchased the Oak Point Community from the sellers, Oak Point Property I LLC, Oak Point Property II LLC, and Oak Point Builders, LLC (the "2011 Purchase").  None of the sellers were Hometown entities.

61.     That 2011 Purchase included, *inter alia*, the land on which the Oak Point Community sits and all Permits pertaining to such property.

62.     That same year, Hometown Communities L.P granted, transferred, and assigned all of its right, title, and interest in, *inter alia*, the property acquired from the 2011 Purchase, including but not limited to the Oak Point Community and the land on which it sits, to Hometown Oak Point I and Hometown Oak Point II.

63.     Since then, and including today, Hometown Oak Point I and Hometown Oak Point II have owned and continue to own the Oak Point Community, the real property on which it sits, and all Permits pertaining to such property.

**Hometown's 2015 Development of Phase VII, Section 2 of the Oak Point Community**

64.     In 2015, the Middleborough Planning Board issued its Second Amended and restated Definitive Site Plan Approval for the Oak Point Community's Phase VII Section 2.

65.     This followed extensive proceedings before the Middleborough Planning Board and substantial technical work by the Middleborough Planning Board's independent consultant at the time, Nitsch Engineering, Inc. ("Nitsch Engineering") which one or more of the Hometown Plaintiffs was required to pay for in connection with the permitting of Phase VII of the Oak Point Community.

66.     One or more of the Hometown Plaintiffs, at considerable expense, duly implemented Nitsch Engineering's stormwater management and drainage recommendations.

67.     The Board of Health did not assert jurisdiction over drainage issues at that time, nor was there any suggestion of any unsanitary conditions.

68.     Thus, the original developer of Oak Point, and after 2011, one or more of the Hometown Plaintiffs, went through all Town of Middleborough and other governmental review processes, including considerable technical consulting work, and obtained all necessary governmental Permits and approvals for the development, construction, and operation of the Oak Point Community as it currently exists.  This work entailed a comprehensive assessment of the

sufficiency of the Oak Point Community's stormwater management and surface water drainage system, and established specific terms and conditions according to which Hometown now has vested property rights to operate the Oak Point Community as it has been constructed.

69.     Further, the Town of Middleborough Building Inspector approved and signed off on each individual manufactured home installation at the Oak Point Community.

### Resident Complaints of Drainage Issues at Oak Point, Starting in 2018

70.     Between 2011, when the Hometown Plaintiffs first came to the Oak Point Community, and the spring/summer of 2018¸ the Hometown Plaintiffs received only an isolated handful of complaints from residents of the Oak Point Community concerning surface water issues on their home sites.  In each case, the Hometown Plaintiffs responded to those complaints by performing an assessment and implementing the resulting engineering recommendations for corrective action.

71.     Starting in 2018, issues with the most recent round of manufactured home installations at the Oak Point Community – all of which had been specifically approved by the Middleborough Building Inspector – led to a HUD-approved Plan of Corrective Action (the "POCA") for 105 homes at the Oak Point Community.

72.     Between May of 2018 and year end 2019, the Hometown Plaintiffs spent over $2.4 million on the POCA.

73.     Public discussions of the POCA also led to the presentation at various public meetings of anecdotal resident complaints to the Board of Selectmen about surface water drainage issues on their home sites at the Oak Point Community.

74.     One publication reported that Oak Point Community residents appeared unannounced and complained at an April 5, 2018 Board of Selectman meeting, and resident Paula Fay accused Town Manager Robert Nunes ("Nunes") of dismissing her over the phone by

saying the Board of Selectmen did not have time to listen to her and had better things to do.  The publication further reported that Nunes stated at the April 5, 2018 meeting that he did not say that, and instead told her that the Oak Point Community problems did not fall under the jurisdiction of the Board of Selectmen.

75.     Another publication reported that then-Board of Selectman Allin Frawley stated at a 2018 meeting that the Board of Selectmen needed to be extremely careful in how they proceeded with the Oak Point Community, and that they would get into a lot of trouble if a Hometown entity made the case that the Board of Selectmen was prejudiced against it because the Board of Selectmen had taken testimony from residents beforehand without a Hometown entity being present.

### HUD's 2018 Notification to the Oak Point Community Homeowners That the Hometown Plaintiffs Are Not Legally Responsible for Pre-2011 Home Installations at the Oak Point Community

76.     On June 8, 2018, HUD informed various Oak Point Community homeowners via email that because HUD's Uniform Standards were effective October 20, 2008, "HUD has no basis to pursue enforcement with respect to any installation that occurred before October 2008." Furthermore, since no Hometown entity owned the Oak Point Community prior to 2011, HUD concluded:  "For any installations occurring before the purchase of Oak Point by Hometown America, HUD does not currently possess evidence sufficient to establish legal liability on the part of Hometown America for such installations."

### Hometown's Voluntary Development of the Surface Water Inspection Program In Response to Resident Concerns About Home Site Drainage Issues

77.     Despite some residents complaining of water issues on their home sites from faulty installations with which no Hometown entity was involved (because the installations had been completed prior to any Hometown entity's involvement with the Oak Point Community),

the Hometown Plaintiffs voluntarily developed and implemented an original formal program in the summer of 2018 to respond to home site drainage complaints from residents in the Oak Point Community, known as the Surface Water Inspection Program ("SWIP").

78.     To date, the Hometown Plaintiffs voluntarily have spent nearly $2,100,000  to resolve the Oak Point Community residents' drainage complaints under SWIP.  Hometown has enhanced its SWIP, based on its experience since the summer of 2018, and  the SWIP work is ongoing.

### The Absence of Citations For Sanitary Code Violations

79.     The Middleborough Board of Health is statutorily authorized to inspect the Oak Point Community and to enforce the state Sanitary Code pursuant to M.G.L. c. 111, §127A (State Sanitary Code – "local boards of health shall enforce said code") and M.G.L. c. 140, §32C (Manufactured Housing Act – local boards of health "shall, from time to time, examine all . . . manufactured housing communities . . . " to determine compliance with state Sanitary Code).

80.     Prior to 2019, neither the Board of Health nor any officer or inspector of the Town's Health Department had issued any citation(s) for any alleged Sanitary Code violations against the Hometown Plaintiffs in connection with the Oak Point Community.  The same remains true as of the date of the filing of this Complaint.

81.     In the Fall of 2019, the Board of Selectmen, acting as the Board of Health, directed the Middleborough Health Officer Robert Buker ("Buker" or the "Health Officer") to undertake a special investigation of resident complaints about drainage on their home sites at the Oak Point Community.

82.     In October and November of 2019, both the Health Officer and the Middleborough Health Inspector (Margaret Juneau) conducted site visits and resident interviews for 41 individual home sites at the Oak Point Community.

83.     On repeated occasions during the course of these 2019 site visits and resident interviews, the Health Inspector informed the Hometown Plaintiffs that he had seen no evidence of Sanitary Code violations in connection with the then-ongoing investigation, through his site visits then to date.

84.     The Sanitary Code regulations require the health inspector, upon inspection, to "record all violations if any" and to "complete an inspection report."

85.     Although the Health Inspector reported publicly at a December 9, 2019 Board of Selectmen meeting that he found evidence of at least one instance of corrodible structural parts and chronic dampness violations, the Health Inspector never issued a single citation for any Sanitary Code violation anywhere at the Oak Point Community.

86.     Further, the Health Inspector did not identify to any Hometown Plaintiff or to the Board of Selectmen or Board of Health a single specific homesite at which he believed unsanitary conditions warranting corrective action was confirmed to be present.  At that same December 9, 2019 Board of Selectmen meeting, the Health Inspector stated:  "So Hometown American has done quite a bit of work.  And as I said, they were very responsive to us here at the Health Department.  The residents have various opinions on that . . . but in my opinion, it does appear as though Hometown America is putting a good foot forward."

87.     At the December 16, 2019 Board of Selectmen hearing, Selectman Frawley stated:  "Before we get into the weeds . . . trying to figure out what drainage calculations are . . . which I don't think we have any business doing, I think maybe we should ask the Planning Board if they want to get involved since it's their plan.  You know, **they [the Middleborough Planning Board] approved all these things before we were here**, so why wouldn't we ask the

Planning Board if they want to get involved?  I'm sure they don't really want to get involved, but they approved the original plans for this whole development, we didn't . . . ."

**The January 2020 Annual Renewal of Oak Point's Operating Licenses**

88.    After finding no Sanitary Code violations at the Oak Point Community in late 2019, the Board of Health, acting through the Middleborough Health Officer Robert Buker, renewed the pertinent Hometown entities' licenses to operate the Oak Point Community on January 17, 2020, for calendar year 2020.  Those licenses state that they will expire on December 31, 2020.

89.    Consistent with past practice and the pertinent state law and regulations, the 2020 annual licensing renewal process was a *pro forma* administrative exercise, based on the submission of a simple one-page standard license renewal form and a $300 processing fee for each of the two licenses.

90.    The Middleborough Health Department's one-page manufactured housing community license renewal form, entitled "Application for a License To Operate a Manufactured Home Park," simply asks for the business name, address, phone number, emergency number, owner's name, manager's name, total number of units, whether development is complete, the name of the trash collector, the name of the pest control operator, whether there is a pool and the name of the pool operator.  The license renewal form is not tied to any new project or development or permit; it is simply a routine annual license.

91.    Hometown's operating licenses for the Oak Point Community for 2020 were renewed with the Middleborough Defendants' full knowledge of the resident complaints and the results of the field inspections of 41 homesites in October and November of 2019 by the Middleborough Health Officer and Health Inspector.

92.     No Hometown Plaintiff currently has any license application pending with any Middleborough Defendant or any Town entity.

**The Proposed 2020 Memorandum of Understanding**

93.     In January 2020, in response to the public discussion of the results of Health Officer Buker's 2019 investigation of the conditions at 41 home sites, the Hometown Plaintiffs proposed that a Memorandum of Understanding ("MOU") be negotiated and entered into between the Hometown Plaintiffs and the Board of Selectmen, in all of its capacities including its role as the Board of Health.

94.     The proposed MOU was expected to confirm a new and mutually-approved detailed process for assessing and responding to residents' drainage complaints at the Oak Point Community, subject to the continuing oversight by the Town's Health Inspector.

95.     Also in January 2020, the Board of Selectmen expressed appreciation and interest in the concept of a MOU and directed the Hometown Plaintiffs to submit a detailed draft, to commence those negotiations.  At the January 27, 2020 Board of Selectmen Hearing, Selectmen Rosenthal stated:  "I've gone through the first cut [of the MOU].  I think it's a great first effort . . . . I applaud you [Hometown] for your efforts so far."

96.     In February 2020, after meetings and discussions with Health Officer Robert Buker, Health Inspector Margaret Juneau, and Town Counsel Daniel F. Murray, the Hometown Plaintiffs delivered their initial proposed draft of the MOU for comment to the Board of Selectmen, which then solicited public comment.

97.     The Board of Selectmen held a heated discussion of the first draft of the MOU at its April 9, 2020 meeting.  Then-Selectman Chairman Stewart stated that she did not "intend to have a vote" on the MOU that meeting, but rather, wanted to make suggested revisions "and send

that list over to Town Counsel so he can incorporate them[sic] appropriately and legally into that document."

98.     At the April 9, 2020 meeting, Selectman Dalpe stated that she was opposed to entering the MOU, that she "was never supportive of a Memorandum of Understanding with [Hometown] . . . because I didn't think it was called for . . . and we needed to hold their feet to the fire."  Selectman Frawley stated:  "I seriously caution the Board about getting involved to the extent that we seem to be getting involved in this.  We don't have the authority to tell that company how to run their business. . . This is a customer service issue between residents and the management.  I think we've overstepped our bounds time and time again for getting this involved in it."  Selectman Dalpe stated:  "[A]s far as it not really being our place, I respectfully disagree with Mr. Frawley . . . ."  Selectman Frawley replied:  "I'd like to hear the Planning Board's thoughts on this since they're the permitting issuing authority on this. . . . I would prefer somebody with some experience and expertise in this matter to weigh in on it, not somebody who is just sitting up here thinking that they know what's going on."  He followed with:  "The Board of Selectmen has no expertise in this matter."

99.     Selectman Dalpe stated that she was "against the [MOU] in any form" because "[t]he Town, whether it's the Planning Board, who happens to give the permit out, or the Building Department or the Health Department, whoever the expertise is in the issue, is the one that has to call the shots.  They come to us and they want to do business in our town.  Well, this is how you do business in our town."

100.     Selectman Chairman Stewart then stated:  "I think a lot of the problem is, you know, what was permitted through the planning [board] twenty years ago should not have been permitted the way it was, but hindsight is 20/20 . . . ."  The Board of Selectmen then voted

unanimously to send their proposed revisions of the MOU to Town counsel, and to have him send the revised version back to the Board of Selectmen before forwarding to the Hometown Plaintiffs' counsel.

101.    The Hometown Plaintiffs never received any responsive draft, nor any written feedback from the Town's counsel on the draft MOU that it had asked the Hometown Plaintiffs to prepare.

102.    The Board of Selectmen then engaged new Special Town Counsel, Gregg J. Corbo of the law firm of KP Law, PC, to handle Oak Point issues, in or around May of 2020.

103.    Special Town Counsel Corbo recommended to the Board of Selectmen that the draft MOU be set aside, and that the Board of Selectmen adopt a new rule to allow the Board of Health to hire outside consultants and to have certain "applicants" pay for those consultant fees. The Board of Selectmen followed Attorney Corbo's new direction.

104.    While waiting for a response to their MOU, the Hometown Plaintiffs, during the first six months of 2020, substantially expanded the SWIP and expended substantial sums of money in connection with the SWIP at Oak Point, and have further continued to do so, to date.

**The June 2020 Election of the Middleborough Board of Selectmen**

105.    The Town of Middleborough held Board of Selectmen elections in June 2020. The Middleborough voters elected Nathan Demers and Mark Germain to the Board of Selectmen.  Demers and Germain replaced longtime Board of Selectmen members Diane Stewart and Allin Frawley, both of whom did not run for reelection.

106.    Defendant Demers was biased against the Hometown Plaintiffs and the Oak Point Community from the beginning.

107.    Prior to the election at the June 2020 Middleborough Candidates Forum, Defendant Demers identified the Oak Point Community as his "most important" issue for the

Town.  He stated that he was "really glad the [Town] decided against signing the MOU," that it was "not the time to sit back," that the Oak Point Community residents were "sold a kind of bill of goods," that it "isn't the best situation," and that the residents were not living "frustration free."

108.    Defendant Demers has done construction work at the Oak Point Community and thus some of the Oak Point Community residents are his customers.  He further had previously met with the Oak Point Homeowners Association board of directors.

109.    Defendant Germain was also biased against the Hometown Plaintiffs even before his election as Selectman.

110.    Also at the June 2020 Middleborough Candidates Forum, Defendant Germain stated his personal conclusions of the Hometown Plaintiffs' guilt as to the Oak Point Community:  "It basically is a chronic dampness that's going on, water on slabs, they've been back in front of the board many times and – with Hometown America – and, as far as I see it, my opinion is we owe it to the residents of Oak Point as the Board of Selectmen and the Board of Health to take care of those issues and resolve that problem with Hometown America."

111.    After the 2020 Selectmen election, the Town, with new Selectmen and a new Chairman of the Board of Selectmen, abruptly switched its tune.  The Selectmen apparently no longer felt that "this is a customer service issue between residents and the management," and that "hindsight is 20/20," and no longer continued to "applaud you [Hometown] for your efforts."

**The June 2020 Invitation to Submit a Proposal
for Engineering Services Relating to the Oak Point Community**

112.    On June 23, 2020, Special Town Counsel Corbo sent an e-mail to Tetra Tech inviting it to "submit a proposal for engineering services" relating to the Oak Point Community.

113.     Special Town Counsel Corbo's June 23, 2020 e-mail stated in part that the Oak Point Community "was built in seven phases between 1996 and 2006, and it has been subject to review by the Town's Planning Board and Conservation Commission, as well the Massachusetts Department of Environmental Protection and the U.S. Environmental Protective Agency. An incomplete list of permits and reviews is attached hereto for your reference."  Attorney Corbo's e-mail also referenced the *Craw* purported class action pending in federal court and stated that the Town "is not seeking litigation support at this time."

114.     Special Town Counsel Corbo's June 23, 2020 e-mail also referenced a possible enforcement action and acknowledged that the Middleborough staff did not have the time or expertise to take on such a project.  Specifically, Attorney Corbo stated:  "As the licensing authority for the Facility, the Board is responsible for investigating resident complaints and it may initiate enforcement action if it finds that the conditions at the Facility are detrimental of the health and safety of the residents. The Board's staff, however, does not have the time or the expertise to take on a project of this magnitude."

### The June 2020 Adoption of the Board of Health's Consultant Fee Rule

115.     On June 29, 2020, the Board of Selectmen, with its two newly-elected Selectman (Demers and Germain), acting as the Board of Health, adopted "Town of Middleborough Board of health[sic] Rule Regarding Consultant Fees" (hereinafter, the "Consultant Fee Rule").  The Consultant Fee Rule states that it is adopted pursuant to M.G.L. c. 44, §53G (hereinafter, the "Outside Consultant Statute") and Mass G.L c. 111, §31 (hereinafter, the "Health Regulation Statute").

116.     On information and belief, the Consultant Fee Rule was promulgated specifically in response to the Board of Health's concerns about the Oak Point Community, as part of a new strategy for imposing substantial pressure on Hometown. Board Chairperson Dalpe stated at the

26

June 29, 2020 hearing:  "The Town, looking at things, decided that we really have limited

resources in our staff to expend on investing and inspecting the drainage problems at Oak Point.

. . . [W]e have decided that we would like to bring in an outside consultant with the expertise on

these issues to review all of the information that's already done. . . KP [L]aw has proposed the

following [four] phased approach for an outside peer review consultant to be paid for by

Hometown."

117.    The Consultant Fee Rule applies to "applicants," and "applications for" or

inspections "in relation to" "an application for" "manufactured housing communities."  The only

entity that has to deposit funds is the "Applicant:"  "The Board may require that an Applicant

deposit a lump sum in order to retain such consultants."

118.    Further, under the Consultant Fee Rule, after the money is collected from the

"Applicant," and goes into the special fund, expenditures "shall be made only for services

rendered in connection with a specific project or projects for which a project review fee has been

or will be collected from the APPLICANT."  (emphasis added).

119.    The Consultant Fee Rule thus applies when a new project is being proposed, and

it cannot properly be used in connection with a routine annual operating license renewal

application for an already-constructed manufactured housing community that has been occupied

for many years.  Board of Selectman Rosenthal noted the same:  "I've seen these situations

evolve [an applicant paying for a third party review] when someone is coming before the Board

and asking us for something.  I've never seen this done when no one is asking us for

something."

120.    The Consultant Fee Rule further conditions permit and/or license

issuance/renewal on the demanded payment:  "Failure of an applicant to pay a review fee shall

be grounds for denial of the application.  Alternatively, approval of such application may be conditioned upon payment of any outstanding review fees."

121.    At the June 29, 2020 Board of Selectmen/Board of Health meeting, Special Town Counsel Corbo stated that "denial of permit application or license application" is the remedy for a failure to pay a fee imposed pursuant to the Special Consultant Rule.

122.    There is no application by any of the Hometown Plaintiffs for any permit or license now pending before the Board of Health.

123.    The Consultant Fee Rule provides for a very limited appeal and on very narrow grounds, and makes no mention of judicial review.

124.    The Consultant Fee Rule provides for an appeal to the "Board of Selectmen," which is, of course, the same entity that enacted the Consultant Fee Rule.

125.    The Consultant Fee Rule further limits appeal to two issues only:  "The grounds for such an appeal shall be limited to claims that the consultant selected has a conflict of interest or does not possess the minimum, required qualifications."

### The Board of Health's July 13, 2020 Decision to Engage a Consultant to Perform Phase I of the July 7, 2020 "Proposed Scope of Work and Order"

126.    On July 13, 2020, the Board of Health voted to approve and proceed with Phase I of a "Proposed Scope of Work and Order" for outside consulting services at the Oak Point Community, as prepared and presented by Special Town Counsel Corbo in the form of a memorandum to the Town Manager dated July 7, 2020.

127.     The July 7, 2020 memorandum which outlines the Proposed Scope of Work and Order provides, in part, that "the Board of Health will require the payment of a review fee by Hometown America so that the Board can retain the services of a qualified engineer to assist the Board in proceedings to renew the manufactured housing community license for the Oak Point

Manufactured Housing Community, and in particular, to address surface water and or drainage issues reported by residents of the community, with said license expiring on December 31, 2020." The Proposed Scope of Work and Order also states that the engineering consultant's work will be provided "for the purpose of assisting the Board in making its license renewal decision."

128.    Special Town Counsel has stated that denial of the Hometown Plaintiffs' annual licenses will be the remedy for the Hometown Plaintiffs' failure to pay the Review Fee.

129.    During the entire time period that the Oak Point Community has existed, the Town of Middleborough has never had a "review fee" in place – until mid-2020.  Neither Hometown America, nor any other Hometown entity, has any license application currently pending before the Middleborough Board of Health or the Middleborough Board of Selectmen.

130.    Phase I of the Scope of Work and Order as approved by the Board of Health requires the following services:

> Review documentation concerning permitting and approvals for the [Oak Point Manufactured Home Community] facility, including plans and specifications for stormwater and groundwater facilities; review as built plans for compliance with permit terms and conditions; review resident complaints and documentation; review inspection reports, review existing professional studies and recommendations, including but not limited to studies and surveys currently being prepared on behalf of Hometown America, and any other information that Hometown America and/or residents wish to provide.  Provide initial report and recommend full scope of work and cost estimate for Phases II, III, and IV.  Phase I to include a limited site inspection, including but not limited inspection of a sampling of individual home sites and the areas below and adjacent to the homes. Phase I to include meetings with representatives and consultants designed by Hometown America and/or residents to be coordinated through KP Law.

131.    The Hometown Plaintiffs and/or their predecessors have received over **50** different Permits through seven phases of construction of the Oak Point Community **since 1992**. Several different Town, state, and federal governmental entities issued these Permits.  Many of

those Permits were issued by some governmental entity of the Town of Middleborough,

including the Middleborough Planning Board.  In granting Certificates of Completion, the

Middleborough Planning Board, with the help of engineers, necessarily determined and

confirmed that the "as built plans" complied with "permit terms and conditions."  Phase I of the

"Proposed Scope of Work and Order" is a therefore a Do Over.

132.     Even Selectman Rosenthal stated, when contemplating the Proposed Scope of

Work and Order, that he was not "100 percent certain we have to go back and reinvent the wheel

here."  At the June 29, 2020 Board of Selectman meeting where the Board approved the

Consultant Fee Rule, Selectman Rosenthal again stated:  "I looked at this Phase I through Phase

IV and it does seem to me that Phase I is reinventing the wheel to some degree.  I don't see why

they have to go back and review every single approval and every single document since the

beginning of time."  Yet, that is precisely what the Board of Selectmen, acting as the Board of

Health, proceeded to require be done.  The Middleborough Defendants want the Hometown

Plaintiffs to pay to reinvent the same wheel that the Hometown Plaintiffs and their predecessors

previously paid to establish, and that the Middleborough Planning Board previously approved.

### The Board of Health's July 27, 2020 Fee Order

133.     On July 27, 2020, the Board of Selectmen, acting as the Board of Health,

approved Tetra Tech's engineering proposal, hired Tetra Tech for Phase I of the Proposed Scope

of Work and Order, and required Hometown to pay Tetra Tech's fees ($16,590) ("Fee Order").

134.     On information and belief, the Fee Order reflects and is a result of the Board of

Selectman's longstanding frustration with the decision-making of the Middleborough Planning

Board.

135.     In 2015, one publication reported that then-Selectman Stephen J. McKinnon

stated:  "I think it obvious that this department [the Planning Board] is one of the greatest

encumbrances to the growth of our town.  In fact, this department [the Planning Board] is, in my opinion, a great embarrassment to the Town of Middleborough."  A publication reported that Leilani Dalpe, who is still a Selectman and currently chairs the Board of Selectmen, stated:  "I spoke with Bob Nunes [the Town Manager] with a handwritten list mentioning . . . Oak Point as [an] issue[] I thought there should be intervention with the Planning Board."

136.    At the December 9, 2019 Board of Selectmen meeting, Selectman Dalpe stated: "For decades, the Planning Board has been dealing with concerns they had and they have been reassured that the plan through engineers would be fine.  But I think it's time to look at it again and say, 'Well, maybe it's not going to be fine.'"   At a recent September 14, 2020 hearing, now-Chairman Dalpe stated:  "[I]t wouldn't have gotten to the Board of Selectmen, the Board of Health if all of that [permitting process] had worked."

137.    The Board of Selectmen, acting as the Board of Health, has now ordered a Do Over of what the Middleborough Planning Board already did multiple times over the last 28 years.  It is requiring the Hometown Plaintiffs to pay for a third-party engineer to review all of the over 50 Permits granted in connection with the Oak Point Community for the last 28 years, most of which were granted by the Middleborough Planning Board and/or Middleborough Conservation Commission, and also to review the plans and specifications submitted with those Permit applications, and the post-construction as-built plans for compliance with those Permits as issued.

138.    Not only have the Hometown Plaintiffs been required to pay the Review Fee for the Phase I engineering services to be provided by Tetra Tech, but the further burdening of Hometown with the additional expenses for Phases II, III, and IV of the Scope of Work and Order (which include resolving "groundwater/stormwater problems" and resident complaints), is

impending.  Tetra Tech's Phase I duties, for which the Hometown Plaintiffs have been ordered to

pay, include "recommend[ing] full scope of work and cost estimate for Phases II, III and IV."

139.    By letter dated August 4, 2020, Robert Nunes, the Town Manager for the Town of

Middleborough, notified the Hometown Plaintiffs via their counsel, Lisa Goodheart, that:  (a) the

Board of Selectmen, acting as the Board of Health, had hired Tetra Tech as the engineer to

complete Phase I of the Proposed Scope of Work and Order; (b) at the July 27, 2020 hearing, the

Board of Selectmen acting as the Board of Health "ordered Hometown America (by and through

any or all of its corporate forms") . . . pay to the Town the sum of $16,590 for the purpose of

funding the consultant's work . . . ;" and (c) if the Hometown Plaintiffs wished to appeal, they

needed to do so within twenty (20) days of receipt of that August 4, 2020 letter, such appeal

would be to the Board of Selectmen, and such appeal would be limited to claims that Tetra Tech

had a conflict of interest or did not possess the minimum, required qualifications of an

educational degree in, or related to, the field at issue or three or more years of practice in the

field at issue or a related field.

140.    At the July 13, 2020 Board of Selectmen/Board of Health meeting, the Selectmen

themselves, acting as the Board of Health, and the Town's Special Counsel, acknowledged the

hollow appeal offered by the Town of Middleborough under the Outside Consultant Statute and

the Consultant Fee Rule, with the appeal being taken to the Board of Selectmen from a decision

by the same Board of Selectmen acting as the Board of Health.  Board Member Battistini stated:

"I do think we should look into the appeals process . . . Since we [the Board of Selectmen] are

the appealing authority, that does present a conflict."  Board Member Demers similarly stated:

"I do agree with some of things Battistini said, Selectman Battistini said about the appeals

process."  The Town's Special Counsel agreed:  "The statute [M.G.L. c. 44, §53G] provides the

mechanism for appealing any determination of the Board.  And unfortunately, the legislature did not take into account the unusual circumstance in which the Board of Health and the Board of Selectmen are one and the same."

### Hometown's Hollow Appeal Opportunity
### to the Same People Who Issued the Fee Order

141.    On August 24, 2020, Hometown timely appealed the Fee Order.  The appeal was required to be, and was, presented to the Board of Selectmen.

142.    Due to the constraints imposed on the appeal by the Consultant Fee Rule, Hometown's appeal of the Fee Order was limited to the issue of whether the Tetra Tech team engaged by the Board of Health possessed the minimum, required qualifications of an educational degree in, or related to, the field at issue or three or more years of practice in the field at issue or a related field.

143.    The Town of Middleborough's Town Manager, Robert Nunes, informed the Hometown Plaintiffs by letter dated September 1, 2020, that the Board of Selectmen would consider and decide the appeal; thus, the people deciding Hometown's appeal would be the same people who entered the Fee Order in the first place.

144.    In that September 1, 2020 letter, Town Manager Nunes also informed the Hometown Plaintiffs that the "Board of Selectmen will consider your appeal at a public meeting on September 14, 2020" and would make a decision based on the existing information in the possession of the Town.

145.    The Board of Selectmen would not allow the Hometown Plaintiffs to submit additional evidence or present any live testimony at the September 14, 2020 public meeting.

**The Board of Selectmen's Denial of the
Hometown Plaintiffs' Appeal of the Fee Order**

146.    Of course, given that the appeal was to the same people who entered the Fee

Order being appealed, the Board of Selectmen denied the Hometown Plaintiffs' appeal on

September 14, 2020.  In a grossly unconstitutional manner, the Board of Selectmen, after Special

Town Counsel Corbo urged the Board of Selectmen in detail to affirm the decision they had

made as the Board of Health, refused to hear Hometown's position, or any arguments from the

Hometown Plaintiffs' counsel.  Board of Selectmen Chairman Dalpe stated:  "We are not taking

any, any comments from . . . Hometown."

147.    By letter dated September 15, 2020 and sent by e-mail on September 16, 2020,

the Town Manager, Robert Nunes, notified the Hometown Plaintiffs' counsel, Lisa Goodheart,

that on September 14, 2020, "the Town of Middleborough Board of Selectmen voted to affirm

the July 27, 2020 decision of the Board of Health to appoint Tetra Tech as its engineering

consultant . . . and to require [the] Hometown [Plaintiffs] to pay the Town the sum of $16,590 to

fund the work of said consultant, and further to order that [the] Hometown [Plaintiffs] pay said

funds within ten days of receipt of this decision."

**Conditioning the Fee Order's Withdrawal on a
Settlement of the *Craw* Purported Class Action**

148.    A resident of the Oak Point Community has sued the Hometown Plaintiffs in the

*Craw* purported class action.  *See Craw v. Hometown America, LLC*, the United States District

Court for the District of Massachusetts (1:18-cv-12149).  At the July 13, 2020 Board of

Selectmen/Board of Health meeting, Special Town Counsel Corbo, in addressing the Proposed

Scope of Work and Order, and the ensuing Fee Order, stated:

> [T]his is a matter that is in litigation between Hometown America and the [Oak
> Point Community] residents [the *Craw* purported class action], and were they to

reach a resolution that all of the parties deemed acceptable, I would imagine that the Board would endorse any proposal that both the residents and Hometown America agree to, but to date, it does not appear that that is going to happen anytime soon.

149.    Special Town Counsel Corbo thus stated that the Fee Order would be withdrawn if the Hometown Plaintiffs would settle the *Craw* purported class action in a manner acceptable to the Oak Point residents who are purported class members.

150.    On information and belief, during the entire time period that the Oak Point Community has existed, the Town of Middleborough has never conditioned the withdrawal of a "review fee" on the settlement of a lawsuit between private parties – until 2020.  The Fee Order is thus the Middleborough Defendants' punishment of the Hometown Plaintiffs for their failure to settle the *Craw* purported class action.

### The Hometown Plaintiffs Pay the Town the Required Payment Under Protest

151.    Under protest, the Hometown Plaintiffs timely paid the Review Fee demanded by the Middleborough Defendants for Tetra Tech's Phase I services, ,on September 24, 2020.

### The Hometown Plaintiffs Are Entitled To the Relief They Seek

152.    The facts alleged show that there is a substantial justiciable controversy between the Hometown Plaintiffs and the Middleborough Defendants.

153.    The facts alleged show that the Hometown Plaintiffs and the Middleborough Defendants have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because (a) the Hometown Plaintiffs have been ordered to pay the Town the sum of $16,590 to fund the work of Tetra Tech on Phase I of the four-phase scope of work; (b) the Hometown Plaintiffs have paid $16,590 to the Town under protest; (c) the anticipated further expenses for outside consultant services for Phases II, III, and IV of the four-phase scope of work are impending and will be very substantial; and (d) the upcoming

applications for annual renewal of the licenses to operate the Oak Point Community under the

Manufactured Housing Act, M.G.L. c. 140, §32A-32S, are at substantial risk of being unlawfully

denied and/or improperly conditioned at the direction of the Middleborough Defendants.

154.    The facts alleged show that the Hometown Plaintiffs will suffer an irreparable

injury and that remedies available at law are inadequate because, among other reasons, the

Hometown Plaintiffs cannot avail themselves of meaningful appeal or judicial review of the Fee

Order and/or Proposed Scope of Work and Order.  The extortionate conduct of which the

Hometown Plaintiffs complain is likely to be of a recurring nature because of the need for annual

renewal of the licenses to operate the Oak Point Community.

155.    The facts alleged show that, considering the balance of hardships between the

Hometown Plaintiffs and the Middleborough Defendants, a remedy in equity is warranted

because the constitutional infringements and other harms alleged clearly outweigh the hardship

(if any) to the Middleborough Defendants.

156.    The facts alleged show that the public interest would not be disserved by the

injunctive relief requested by the Hometown Plaintiffs.  The Middleborough Defendants will

continue to have power to perform their lawful tasks and responsibilities, and the requested

injunctions may be limited to the specific circumstances of this case.  Any effect on the public

interest will be outweighed by the serious constitutional deprivations, among other harms,

presented by the alleged facts.

157.    The facts alleged show that the $16,590 amount that the Hometown Plaintiffs paid

to the Town under protest to fund the work of Tetra Tech on Phase I should be awarded to the

Hometown Plaintiffs.

158.    In summary, even though the Oak Point Community, its prior owners and developers, and the Hometown Plaintiffs have satisfied stringent Town, State, and Federal requirements since 1992, the Middleborough Defendants have engaged in flagrantly unconstitutional and discriminatory abuses and manipulation of their local land-use powers in their effort to make extortionate demands of money from the Hometown Plaintiffs.  Motivated by political animus against the Hometown Plaintiffs, the Middleborough Defendants have reached and acted upon an unsupported conclusion of the Hometown Plaintiffs' "guilt" and legal responsibility for correcting uncited and unspecified, but anecdotally complained-of, conditions at an unknown number of unidentified Oak Point home sites, without any trial or appropriate procedural due process, and out of a desire to pressure the Hometown Plaintiffs to settle the *Craw* purported class action.  On this basis, the Hometown Plaintiffs make the following claims:

## COUNT 1

### (Unconstitutional Conditions/Monetary Exaction/Takings Clause Violation under 42 U.S.C. §1983, As Applied – Asserted Against All Middleborough Defendants)

159.    The Hometown Plaintiffs hereby re-allege each and every allegation contained in paragraphs 1 through 158 as though fully set forth herein.

160.    The Middleborough Defendants' actions have violated the unconstitutional conditions doctrine, the monetary exaction doctrine, and the Takings Clause of the Fifth Amendment to the United States Constitution.   These provisions of the United States Constitution are applicable to the Middleborough Defendants through the Fourteenth Amendment of the United States Constitution.

161.    The Hometown Plaintiffs have a protected constitutional right to their property, including but not limited to the Oak Point Community and the land on which it sits.  The Hometown Plaintiffs also have a protected right to their already-issued Permits and licenses

regarding that property.  The Hometown Plaintiffs also have a protected constitutional right to their money as constitutionally protected property.  The Hometown Plaintiffs thus have a property interest as defined by state law and protected by 42 U.S.C. §1983.

162.     The Fee Order and the Proposed Scope of Work and Order and their monetary exaction are extortionate demands, denying a benefit to the Hometown Plaintiffs (the benefit to their land, their money, the unrestricted use of their land, their Permits, and their existing licenses to operate the Oak Point Community), and conditioning that benefit on the Hometown Plaintiffs' payment of money to the Town to fund the third-party engineering firm Tetra Tech to review every Permit that has ever been entered in connection with the Oak Point Community, and all construction's compliance therewith, since its inception in 1992.  *See Koontz v. St. Johns River Water Management Dist.*, 570 U.S. 595, 605, 606, 607, 608, 618 (2013).

163.     The Board of Health's Fee Order and the Proposed Scope of Work and Order and their monetary exaction are tied to a specific piece of property, *i.e.*, the Oak Point Community and more specifically, the land owned by Hometown Oak Point I and Hometown Oak Point II. The Proposed Scope of Work and Order's and the Fee Order's charge to the Hometown Plaintiffs to pay such an outside consultant fee, and to allow an outside consultant to "do over" everything that has been done since 1992, is a stand-in for land-use exaction and constitutes a taking.

164.     No government can deny a benefit to a person because he exercises a constitutional right.

165.     Under *Koontz*, 570 U.S. at 604-18, the Middleborough Defendants' actions have violated the unconstitutional conditions doctrine, the monetary exactions doctrine, and the Takings Clause of the United States Constitution.

166.     The impermissible denial of a governmental benefit, such as a permit or license or an economically viable use of an owner's land, is a constitutionally cognizable injury.

167.     The Middleborough Defendants' monetary exaction in return for the Hometown Plaintiffs' licenses is unconstitutional.  The Middleborough Defendants' monetary exaction, used to overturn Hometown's protected property rights in the form of its Permits granted over the past 28 years, is unconstitutional.

168.     Just as in *Koontz*, the Board of Selectmen's demand for outside consultant money here is a "demand for money" "'operat[ing] upon . . . an identified property interest' by directing the owner of a particular piece of property to make a monetary payment."  *See Koontz*, 570 U.S. at 613.  Here, the Board of Selectmen is demanding money from the Hometown Plaintiffs.  The demand operates on an identified property interest – the Oak Point Community and the Hometown-owned property on which it sits.  Just as in *Koontz*, the Board of Health's Consultant Fee Rule and Fee Order "burden[s] [Hometown's] ownership of [that] specific parcel of land." *Id.* at 613.  Here, as in *Koontz*, there is a "direct link between the government's demand and a specific parcel of real property."  *Id.* at 614.

169.     The Middleborough Defendants may not constitutionally exact money from the Hometown Plaintiffs as a condition of allowing the Hometown Plaintiffs to exercise a property right, because the exaction does not mitigate a public impact directly arising from the Hometown Plaintiffs' exercise of their property rights and the exaction is not roughly proportionate in both nature and degree to the public impact arising from the Hometown Plaintiffs' exercise of their property right.

170.     The Middleborough Defendants' Proposed Scope of Work and Order/Fee Order are concrete and specific demands.

171.    The Fee Order and Proposed Scope of Work and Order are extortionate demands that frustrate the Fifth Amendment right to just compensation, and the unconstitutional conditions doctrine prohibits them.

172.    Remedies are available for an unconstitutional conditions violation.

173.    Extortionate demands in the land-use permitting context run afoul of the Takings Clause because they impermissibly burden the right not to have property taken without just compensation. *Koontz*, 570 U.S. at 607.

174.    Federal law authorizes the Hometown Plaintiffs to recover damages for an unconstitutional conditions claim predicated on the Takings Clause.

175.    The monetary obligation in the Proposed Scope of Work and Order/Fee Order burdens the Hometown Plaintiffs' ownership of specific parcels of land in the Oak Point Community.

176.    There is a direct link between the Middleborough Defendants' demand in the Proposed Scope of Work and Order/Fee Order and specific parcels of real property in the Oak Point Community.

177.    The Fee Order/Proposed Scope of Work and Order constitute a monetary exaction, a confiscation of money from the Hometown Plaintiffs, and a confiscatory financial obligation.

178.    The Proposed Scope of Work and Order/Fee Order constitute an unconstitutional taking under the Takings Clause of the Fifth Amendment of the United States Constitution because they impose extortionate monetary exactions as a condition to a license when no license application is even pending. *Koontz*, 570 U.S. at 605, 606, 607, 608, 618.

179.     While the Supreme Court has recognized that "a government may choose whether and how a permit *applicant* is required to mitigate the impacts of a *proposed* development," *id.* at 606 (emphasis added), there is no pending permit or license application, and no proposed development at issue.

180.     The Proposed Scope of Work and Order/Fee Order have no nexus with any purported license application and are not remotely proportional to any negative impact of any project that is being proposed or is even under current review.

181.     By making the denial of the Hometown Plaintiffs' license to operate the Oak Point Community (and thus the Hometown Plaintiffs' livelihood) imminent unless the Hometown Plaintiffs pay the amount extortionately demanded by the Proposed Scope of Work and Order/Fee Order, the Middleborough Defendants are denying the Hometown Plaintiffs economically viable use of their land.

182.     As evidenced by Special Town Counsel Corbo's statement pressuring the Hometown Plaintiffs to settle the *Craw* purported class action, the purported license application is merely conjured up and pretext, and thus the Proposed Scope of Work and Order/Fee Order are arbitrary and violate the Takings Clause.

183.     The Middleborough Defendants' unconstitutional actions in adopting the Consultant Fee Rule pursuant to the Outside Consultant Statute and Health Regulation Statute, and applying them to the Hometown Plaintiffs in issuing the Proposed Scope of Work and Order/Fee Order, were under color of state "statute, ordinance, regulation, custom or usage," and violated 42 U.S.C. §1983.

184.     This claim seeks declaratory and injunctive relief sufficient to restrain the enforcement of the Outside Consultant Statute, the Health Regulation Statute, and the Consultant

Fee Rule, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and

Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order themselves, and their

unconstitutional condition, monetary exaction, and/or Taking arising from the Proposed Scope of

Work and Order/Fee Order.  The Hometown Plaintiffs also seek an award of the $16,590 that the

Hometown Plaintiffs paid to the Town under protest.  The Hometown Plaintiffs further seek an

award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. §1988.

## COUNT 2

### (Facial and As-Applied Violation of Procedural Due Process
### under 42 U.S.C. §1983 – Asserted Against All Middleborough Defendants)

185.    The Hometown Plaintiffs hereby re-allege each and every allegation contained in

paragraphs 1 through 184 as though fully set forth herein

186.    The Due Process Clause of the United States Constitution prohibits a state from

depriving a person of "life, liberty or property" without due process of law.  U.S. Const. amend.

XIV, §1.  This guarantee has a procedural component.

187.    The Hometown Plaintiffs have a protected constitutional right to the property they

own, including (a) the Oak Point Community and the land on which it sits; (b) their Permits and

licenses regarding that property; and (c) their money.

188.    The Hometown Plaintiffs have a legitimate claim of entitlement to Permits

*already granted*, most *long ago*, by the Middleborough Planning Board and other governmental

entities over the past 28 years, on which the Hometown Plaintiffs have relied at great cost.

189.    The Hometown Plaintiffs have a legitimate claim of entitlement to their annual

license to operate the Oak Point Community, which every year to date the Town has granted,

either to the Hometown Plaintiffs or its predecessors, as an administrative exercise upon the

payment of a very small fee ($300 in 2020) and the filling out of a short form.

190.     Further, conditioning Hometown America's licenses for the Oak Point
Community upon payment of the Review Fee and other amounts in the Proposed Scope of Work
and Order/Fee Order substantially burdens and deprives the Hometown Plaintiffs of their means
of earning a livelihood regarding the Oak Point Community, thus further depriving the
Hometown Plaintiffs of a constitutionally protected property interest.

191.     The Middleborough Defendants, under color of law, have violated the Hometown
Plaintiffs' constitutionally protected property rights as secured by the Due Process Clause and
Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. By
manipulating and misusing their land-use power through hostile and biased actions as set forth
herein, the Middleborough Defendants have deprived the Hometown Plaintiffs of the enjoyment
of their constitutionally protected property without constitutionally adequate process.

192.     The Hometown Plaintiffs, and the prior owners of the Oak Point Community,
took all legally required steps to develop that property, including obtaining all necessary Permits
and/or licenses from the Town of Middleborough and any of its Boards or Commissions, as well
as state and federal governmental entities.  In connection with those Permits/licenses that were
obtained, the Hometown Plaintiffs paid massive sums of money for prior independent
consultants, hired by the Town of Middleborough and/or its Boards/Commissions, to review all
documentation submitted with the Permit applications and to review post-build compliance with
the Permits.

193.     The Proposed Scope of Work and Order/Fee Order requires a Do Over of what
other governmental agencies already approved, and extortionately demands that the Hometown
Plaintiffs pay for that Do Over.  The Proposed Scope of Work and Order/Fee Order retroactively
and substantially increase the Hometown Plaintiffs' monetary liability.  The Hometown Plaintiffs

and their predecessors have already paid for the same independent consultant review that the Proposed Scope of Work and Order/Fee Order require for the over 50 Permits granted since 1992.  The Hometown Plaintiffs, faced with losing their licenses and livelihood to operate the Oak Point Community, paid under protest the $16,590 required by the Proposed Scope of Work and Order/Fee Order on September 24, 2020.  The Proposed Scope of Work and Order/Fee Order thus forced the Hometown Plaintiffs to incur double liability.

194.    The Consultant Fee Rule, promulgated by the Town of Middleborough's Board of Selectmen acting as the Board of Health, on its face gives the Hometown Plaintiffs no meaningful appeal for three reasons.  First, on its face, the Consultant Fee Rule gives **no appeal from the Town's order demanding money**.  The Consultant Fee Rule on its face allows only an appeal "from the selection of the outside consultant."

195.    Second, on its face, the Consultant Fee Rule limits any appeal to the Town of Middleborough's "Board of Selectmen."  The Consultant Fee Rule was adopted by the Middleborough Board of Selectmen acting as the Board of Health.  In Middleborough, the Board of Selection acts as the Board of Health, and thus the two boards are composed of the same five people and are one and the same.  The Consultant Fee Rule offers only an appeal to the same people who passed the Consultant Fee Rule to begin with.

196.    At the July 13, 2020 Board of Selectmen/Board of Health meeting, even the Selectmen, acting as the Board of Health, and Special Town Counsel, recognized the lack of a meaningful appeal for the Hometown Plaintiffs.  Board Member Battistini stated:  "I do think we should look into the appeals process . . . Since we [the Board of Selectmen] are the appealing authority, that does present a conflict."  Board Member Demers similarly stated:  "I do agree with some of things Battistini said, Selectman Battistini said about the appeals process."  Special

Town Counsel agreed:  "The statute [M.G.L. c. 44 §53G] provides the mechanism for appealing any determination of the Board.  And unfortunately, the legislature did not take into account the unusual circumstance in which the Board of Health and the Board of Selectmen are one and the same."

197.     Third, the Consultant Fee Rule limits any appeal "to claims that the consultant selected has a conflict of interest or does not possess the minimum required qualifications.  The minimum required qualifications shall consist either of an educational degree in, or related to, the field at issue or three or more years of practice in the field at issue or a related field."  These three gross deprivations mean that the Consultant Fee Rule, on its face, offers no meaningful appeal at all.

198.     The Consultant Fee Rule, on its face, gives the Hometown Plaintiffs no judicial review.

199.     The Consultant Fee Rule, on its face, is thus an established state procedure depriving the Hometown Plaintiffs of constitutionally protected property without due process.

200.     The Proposed Scope of Work and Order/Fee Order, as applied and issued pursuant to the Consultant Fee Rule, similarly gives the Hometown Plaintiffs no meaningful appeal for the same three reasons and no judicial review.

201.     The Consultant Fee Rule states that it is adopted pursuant to M.G.L. c.111, §31 and M.G.L. c.44, §53G.   M.G.L. c. 44, §53G similarly offers no meaningful appeal.  It offers no appeal from the imposition of fees, but rather only an appeal "from the selection of the outside consultant."  It only offers an appeal to the "city council or town board of selectmen."  It limits the grounds for an appeal to the same limited grounds offered by the Consultant Fee Rule.  It purports to allow judicial review "if otherwise permitted by law," but only "on the grounds

provided for in this section" (review of the outside consultant selection on bias and qualifications grounds).  M.G.L. c. 44, §53G, on its face, is thus an established state procedure depriving the Hometown Plaintiffs of constitutionally protected property without due process.

202.    Indeed, at the September 14, 2020 meeting of the Board of Selectmen, acting as the Board of Health, Special Town Counsel Corbo instructed the Board of Selectmen, acting as the Board of Health, that under M.G.L. c. 44, §53G, and because no issue of bias on the part of Tetra Tech was raised, "your review [of the Hometown Plaintiff's appeal] is limited to the issue of whether Tetra Tech and its employees have the minimum required qualifications."

203.    A biased decision maker is constitutionally unacceptable.  The Hometown Plaintiffs do not even have an operating license renewal application pending for the Oak Point Community.  Yet, the Board of Selectmen, acting as the Board of Health, conditioned the Hometown Plaintiffs' *future* licenses to operate the Oak Point Community on payment of the Fee Order, which is only the tip of the iceberg with the Proposed Scope of Work and Order's Phases II-IV impending.  The Middleborough Defendants were biased in entering the Proposed Scope of Fee and Order/Fee Order.

204.    Selectman Demers' and Selectman Germain's campaign statements demonstrate that bias, as their minds were made up about the Oak Point Community and Hometown's guilt even before their election.

205.    Board Chairman Dalpe's comments at the September 14, 2020 Board of Selectmen, acting as the Board of Health, meeting on the Hometown Plaintiffs' appeal also demonstrated bias.  Chairman Dalpe took a motion to "vote to affirm the July 27, 2020" Fee Order, asked "could I please have discussion," said the Board had "already received evidence" from the Hometown Plaintiffs and, after receiving the Special Town Counsel's lengthy

recommendation to deny the appeal and the reasons therefor, refused to hear any argument from the Hometown Plaintiffs' counsel on their appeal, stating:  "We are not taking any, any comments from . . . Hometown."

206.    Chairman Dalpe also stated at the September 14, 2020 meeting that the Oak Point Community issue "wouldn't have gotten to the Board of Selectmen, the Board of Health," if the Middleborough Planning Board's permitting process "had worked."  She further commented that:  "It's important that Tetra Tech's work begin immediately because the license is due for renewal at the end of the calendar year, which is only three months away at this point," but that "at this time we do not know if Hometown America intends to cooperate in this process."  Her comments at the April 9, 2020 Board of Selectmen meeting, as alleged above, also reflect bias.

207.    Special Town Counsel Corbo's statements about withdrawing the Fee Order if the Hometown Plaintiffs were to settle the *Craw* purported class action further evidence the Town's bias against the Hometown Plaintiffs.

208.    The Middleborough Defendants' intentional misconduct has violated the Hometown Plaintiffs' procedural due process rights.

209.    The Middleborough Defendants' unconstitutional actions in adopting the Consultant Fee Rule purportedly pursuant to the Outside Consultant Statute and the Health Regulation Statute, and applying them to the Hometown Plaintiffs in issuing the Proposed Scope of Work and Order/Fee Order, without procedural due process rights, were under color of state "statute, ordinance, regulation, custom or usage," and violated 42 U.S.C. §1983.

210.    This claim seeks declaratory and injunctive relief sufficient to:  (a) restrain the enforcement of the Outside Consultant Statute, the Consultant Fee Rule, and the Proposed Scope of Work and Order and Fee Order, all of which lack procedural due process on their face; and (b)

restrain the enforcement of the Health Regulation Statute, the Outside Consultant Statute, and the

Consultant Fee Rule as applied to the Hometown Plaintiffs through the Proposed Scope of Work

and Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order themselves, which

application lacks procedural due process.  The Hometown Plaintiffs also seek an award of the

$16,590 that the Hometown Plaintiffs paid to the Town under protest.  The Hometown Plaintiffs

further seek an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C.

§1988.

211.     A plaintiff need not exhaust administrative remedies (what limited ones are

available here) when alleging a section 1983 claim based on constitutional violations.  *Patsy v.*

*Board of Regents of the State of Florida*, 457 U.S. 496 (1982).

## COUNT 3

### (As Applied Violation of Substantive Due Process Claim under 42 U.S.C. §1983 – Asserted Against All Middleborough Defendants)

212.     The Hometown Plaintiffs hereby re-allege each and every allegation contained in

paragraphs 1 through 211 as though fully set forth herein.

213.     The Due Process Clause of the United States Constitution prohibits a state from

depriving a person of "life, liberty or property" without due process of law.  U.S. Const. amend.

XIV, §1.  This guarantee has a substantive component.  Substantive due process functions to

protect individuals from particularly offensive actions on the part of government officials.

214.     The Middleborough Defendants, under color of law, have violated the Hometown

Plaintiffs' constitutionally protected rights to substantive due process as secured under the

United States Constitution and its Fourteenth Amendment, and 42 U.S.C. §1983.

215.     The Middleborough Defendants' conduct described herein evidences conduct that

is truly outrageous, uncivilized, and intolerable, including but not limited to:  (a) the Board of

Selectman members' biased comments regarding the Hometown Plaintiffs during their election campaigns and their public conclusions of the Hometown Plaintiffs' guilt; (b) Special Town Counsel Corbo's statement that the Do Over/Fee Order will be withdrawn if the Hometown Plaintiffs settle the *Craw* purported class action in a manner acceptable to the plaintiff in the *Craw* case; and (3) the Board of Selectmen, acting as the Board of Health, requiring the Hometown Plaintiffs to pay for a Do Over of what their own Middleborough Planning Board previously approved, despite a Board of Selectman member telling them that the Middleborough Planning Board "approved all these things before we were here."  The Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order, are so "arbitrary and oppressive" as to violate the Due Process Clause.

216.    The Middleborough Defendants' intentional misconduct has violated the Hometown Plaintiffs' substantive due process right not to be deprived of property or its use except by laws, regulations or government actions that are rationally related to a legitimate government interest.  The Middleborough Defendants' intentional misconduct set forth above, and the fact that the Hometown Plaintiffs do not even have an operating license renewal application pending, demonstrate that the Proposed Scope of Work and Order/Fee Order is not rationally related to a legitimate government interest.

217.    The Proposed Scope of Work and Order/Fee Order is so grossly excessive as to amount to a deprivation of property without due process of law.  The $16,590 Review Fee is more than 55 times the $300 standard annual license application fee.  The $16,590 Review Fee is more than 33 times the *maximum* $500 penalty for a Sanitary Code violation (the range running from $10 to $500).  105 Mass. Code Regs. 410.910.  As the Middleborough Defendants have

already acted to engage Tetra Tech to commence its Phase I work expeditiously, and such work calls for a determination of how much Phases II-IV of the Board of Health's Proposed Scope of Work and Order will cost, the Middleborough Defendants' anticipated demand that the Hometown Plaintiffs pay whatever Tetra Tech concludes for Phases II-IV is imminent.

218.    The Middleborough Defendants' unconstitutional actions in adopting the Consultant Fee Rule pursuant to the Outside Consultant Statutes, and applying them to the Hometown Plaintiffs in issuing the Proposed Scope of Work and Order/Fee Order, in violation of the Hometown Plaintiffs' substantive due process rights, were under color of state "statute, ordinance, regulation, custom or usage," and violated 42 U.S.C. §1983.

219.    This claim seeks declaratory and injunctive relief sufficient to restrain the enforcement of the Health Regulation Statute, the Outside Consultant Statute, the Consultant Fee Rule, and the Proposed Scope of Work and Order/Fee Order as applied to the Hometown Plaintiffs, for violating substantive due process.  The Hometown Plaintiffs also seek an award of the $16,590 that the Hometown Plaintiffs paid to the Town under protest.  The Hometown Plaintiffs further seek an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. §1988.

### COUNT 4

**(As Applied Violation of Excessive Fines Clause of the Eighth Amendment
to the United States Constitution under 42 U.S.C. §1983 and the Massachusetts
Declaration of Rights – Asserted Against All Middleborough Defendants)**

220.    The Hometown Plaintiffs hereby re-allege each and every allegation contained in paragraphs 1 through 219 as though fully set forth herein.

221.    The Middleborough Defendants, under color of law, have violated the Hometown Plaintiffs' constitutionally protected rights as secured under the Eighth Amendment to the United

States Constitution's prohibition against excessive fines (the "Eighth Amendment"), the

Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1983.

222.     The United States Constitution provides:  "Excessive bail shall not be required,

nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend.

VIII.  The Eighth Amendment's excessive fines clause prohibits the imposition of excessive

fines by the government.  The Excessive Fines Clause "limits the government's power to extract

payments, whether in cash or in kind, 'as punishment for some offense.'"  *Austin v. United*

*States*, 509 U.S. 602, 609-10 (1993) (quoting *Browning-Ferris Industries of Vt., Inc. v. Kelco*

*Disposal, Inc.*, 492 U.S. 257, 265 (1989)).

223.     The United States Supreme Court recently held that the Eighth Amendment's

Excessive Fines Clause is incorporated by the Due Process Clause of the Fourteenth

Amendment, and thus the Eighth Amendment Excessive Fines Clause is applicable to the states.

*Timbs v. Indiana*, 139 S. Ct. 682 (2019).  It governs municipal fines and fee orders that "punish,"

at least in part, as well.

224.     The Outside Consultant Statute, the Health Regulation Statute, and the Consultant

Fee Rule, as applied to the Hometown Defendants through the Proposed Scope of Work and

Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order themselves, are

unconstitutional in that they impose excessive fines and/or penalties on the Hometown

Defendants that are grossly disproportionate to the gravity of the "offense" that they punish, in

violation of the Eighth and Fourteenth Amendments to the United States Constitution.

225.     Comments made by members of the Board of Selectmen during the election

campaign, as well as at various meetings and hearings detailed above, demonstrate that the they

have presumptively and speculatively concluded, without the required process, that there are one

or more Massachusetts Sanitary Code violations at the Oak Point Community, for which the Hometown Plaintiffs are responsible.  As punishment for such unproven but presumed violations, the Board of Selectmen threaten the Hometown Plaintiffs with denial of their licenses to operate the Oak Point Community and thus their livelihood, and require the Hometown Plaintiffs to pay them $16,590 for a Do Over of what their own Middleborough Planning Board and other governmental entities have already done.

226.    Further, the Fee Order specifically states that "the Board of Health will require the payment of a review fee by Hometown America . . . to renew the manufactured housing community license . . . ."  The amount that the Hometown Plaintiffs have been required to pay -- $16,590 -- is over 54 times greater than the $300 manufactured home community license that the Hometown Plaintiffs have had to pay in the past for each license's renewal.

227.    The unconstitutional Excessive Fine conditions the Hometown Plaintiffs' license renewal on payment of this $16,590 "review fee," and thus can take away the livelihood of Hometown Oak Point I, LLC and Hometown Oak Point II, LLC, both of which manage the Oak Point Community as their sole source of revenue and livelihood.

228.    That the Fee Order's $16,590 is grossly disproportionate to the alleged "offense" is further demonstrated by the real reason for the Fee Order.  The purpose of the Board of Selectmen, acting as the Board of Health, in enacting the Consultant Fee Rule and in entering the Proposed Scope of Work and Order/Fee Order was to try to force the Hometown Plaintiffs into settling the *Craw* purported class action in a manner acceptable to the plaintiff in the *Craw* case.

229.    For all of the same reasons, the Middleborough Defendants' actions violate the Excessive Fines Clause of the Massachusetts Declaration of Rights.  M.G.L.A. Const. Pt. 1, Art 26 ("No magistrate or court of law, shall . . . impose excessive fines. . . .").  The rights

guaranteed under Article 26 are as broad as those rights protected under the Eighth Amendment of the United States Constitution. *Torres v. Commissioner of Correction*, 427 Mass. 611, 615-16, 695 N.E.2d 200 (1998) (citing *Michaud v. Sheriff of Essex County*, 390 Mass. 523, 534, 458 N.E. 2d 702 (1983)).

230.    The Middleborough Defendants' unconstitutional actions in adopting the Consultant Fee Rule pursuant to the Outside Consultant Statute and Health Regulation Statute, and applying them to the Hometown Plaintiffs in issuing the Proposed Scope of Work and Order/Fee Order, were in violation of the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, were under color of state "statute, ordinance, regulation, custom or usage," and violated 42 U.S.C. §1983.

231.    This claim seeks declaratory and injunctive relief sufficient to restrain the enforcement of the Health Regulation Statute, the Outside Consultant Statutes and the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order themselves, for violating the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and the Massachusetts Declaration of Rights.  The Hometown Plaintiffs also seek an award of the $16,590 that the Hometown Plaintiffs paid to the Town under protest.  The Hometown Plaintiffs further seek an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. §1988.

## COUNT 5

### (As Applied Unlawful and Unconstitutional Bills of Attainder under 42 U.S.C. §1983 – Asserted Against All Middleborough Defendants)

232.    The Hometown Plaintiffs hereby re-allege each and every allegation contained in paragraphs 1 through 231 as though fully set forth herein.

233.     Art. I, § 10 of the United States Constitution provides, "No State shall ... pass any Bill of Attainder." A bill of attainder is a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial. *Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 468 (1977).

234.     The hallmarks of a bill of attainder are specification of the affected persons, punishment, and lack of a judicial trial. *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841, 847 (1984).

235.     The Middleborough Board of Selectmen adopted the Consultant Fee Rule after Special Town Counsel Corbo proposed that the previously-desired draft MOU be set aside.

236.     As set forth herein, certain members of the Board of Selectmen have expressed hostility, bias and prejudice against the Hometown Plaintiffs and the Oak Park Community.

237.     The as-applied unconstitutional statutes are the Outside Consultant Statute and the Health Regulation Statute (M.G.L. c. 111, §31 and M.G.L. c. 44, §53G). These as-applied unconstitutional statutes are legislative acts, passed into law by the Massachusetts legislature. The Consultant Fee Rule is also a legislative act. The Middleborough Board of Selectmen, acting as the Board of Health, purportedly adopted the Consultant Fee Rule pursuant to M.G.L. c. 111, §31, which states that "Boards of Health may make reasonable health regulations." Thus, the Massachusetts "legislature has delegated boards of health the power to adopt reasonable health regulations." *Tri-Nel Mgmt., Inc. v. Bd. of Health of Barnstable*, 433 Mass. 217, 220, 741 N.E.2d 37, 41 (2001). The Proposed Scope of Work and Order/Fee Order, applying the Consultant Fee Rule to the Hometown Plaintiffs, are similarly legislative.

238.     The Consultant Fee Rule provides that it applies to "an application for . . . or inspections in relation to, an application for septic installations, food permits, licenses for motels,

camps, manufactured housing communities, or other matter(s)" within the jurisdiction of the Board of Health." The Hometown Plaintiffs have no application for any permit or license currently pending before the Board of Health or the Board of Selectmen.

239.    The Consultant Fee Rule also provides that the Board of Health, which is comprised of the same members as the Board of Selectmen, may determine that the "assistance of outside consultants is warranted due, for instance and without limitation, to the size, scale or complexity of a proposed project, because of a project's potential impacts, or because the Town lacks the necessary expertise to perform the work related to the matter before the Board [of Health]." The Hometown Plaintiffs have no "proposed project" pending before the Board of Health or the Board of Selectmen.

240.    While the Consultant Fee Rule is facially broad in its potential application, the facts described herein regarding its passage and the immediately subsequent entry of the Proposed Scope of Work and Order/Fee Order by the Board of Selectmen, acting as the Board of Health, reveal that the Board of Selectmen *qua* Board of Health intended the Consultant Fee Rule to apply uniquely to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order.

241.    The Consultant Fee Rule, as applied through the Proposed Scope of Work and Order/Fee Order, retroactively and duplicitously increases the Hometown Plaintiffs' monetary liability and constitutes punishment for presumed but uncited Sanitary Code violations by the biased Board of Selectmen acting as the Board of Health. The Hometown Plaintiffs and their predecessors have already paid for the same independent consultant review that the Proposed Scope of Work and Order/Fee Order requires for over 50 Permits granted since 1992. In paying the $16,590 Review Fee under protest, the Hometown Plaintiffs have incurred duplicative costs

for a redundant third-party engineering review.  The Board of Selectmen, acting as the Board of Health, is punishing the Hometown Plaintiffs, through the Proposed Scope of Work and Order and Fee Order, for their failure to settle the *Craw* purported class action in a manner acceptable to the plaintiff in the *Craw* case.

242.    The Proposed Scope of Work and Order/Fee Order, as applied and issued pursuant to the Consultant Fee Rule, by the Board of Selectmen, acting as the Board of Health, conditions the Hometown Plaintiffs' licenses to operate the Oak Point Community on duplicative review of Permits granted during the last 28 years and the payment of massive sums in connection therewith.

243.    The Proposed Scope of Work and Order/Fee Order, as applied and issued pursuant to the Consultant Fee Rule, is confiscatory of the Hometown Plaintiffs' property, specifically their rights to their already-issued Permits and licenses, and would deny the Hometown Plaintiffs their livelihood by denying them the right to operate the Oak Point Community.

244.    The Consultant Fee Rule, as applied through the Proposed Scope of Work and Order/Fee Order, imposes punishment upon the Hometown Plaintiffs for past conduct.

245.    The Board of Selectmen *qua* Board of Health has no legitimate public purpose in enacting the Proposed Scope of Work and Order/Fee Order.  Instead, it desires to coerce the Hometown Plaintiffs to "reach a resolution" with the *Craw* plaintiff and intends to punish them for their failure to do so.

246.    The Board of Selectmen, acting as the Board of Health, punished the Hometown Plaintiffs by imposing the Consultant Fee Rule, as applied through the Proposed Scope of Work and Order/Fee Order, on the Hometown Plaintiffs without a judicial trial.  Special Town Counsel

Corbo stated at the July 13, 2020 Board of Selectmen/Board of Health hearing that "it is not a trial."

247.     For all of the reasons set forth above, the Consultant Fee Rule and the Outside Consultant Statute provide no meaningful appeal from the Proposed Scope of Work and Order/Fee Order.

248.     The Consultant Fee Rule, as applied through the Proposed Scope of Work and Order/Fee Order, is specific to the Hometown Plaintiffs.

249.     The Consultant Fee Rule, as applied through the Proposed Scope of Work and Order/Fee Order, imposes punishment upon the Hometown Plaintiffs for past acts without a judicial trial and/or any meaningful appeal.

250.     The Consultant Fee Rule, the Health Regulation Statute, and the Outside Consultant Statute, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order, constitutes an unconstitutional bill of attainder.

251.     The Middleborough Defendants' unconstitutional actions in adopting the Consultant Fee Rule pursuant to the Outside Consultant Statute and the Health Regulation Statute, and applying them to the Hometown Plaintiffs in issuing the Proposed Scope of Work and Order/Fee Order, in violation of the United States Constitution's prohibition against bills of attainder, were under color of state "statute, ordinance, regulation, custom or usage," and violated 42 U.S.C. §1983.

252.     This claim seeks declaratory and injunctive relief sufficient to restrain the enforcement of the Outside Consultant Statute, Health Regulation Statute, and the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order, and of the Proposed Scope of Work and Order/Fee Order themselves, for

constituting unlawful and unconstitutional bills of attainder.  The Hometown Plaintiffs also seek

an award of the $16,590 that the Hometown Plaintiffs paid to the Town under protest.  The

Hometown Plaintiffs further seek an award of attorneys' fees, costs, and expenses in this action

pursuant to 42 U.S.C. §1988.

## COUNT 6

### (As Applied Violation of Equal Protection Clause Under 42 U.S.C. §1983 – Asserted Against All Middleborough Defendants)

253.    The Hometown Plaintiffs hereby re-allege each and every allegation contained in

paragraphs 1 through 252 as though fully set forth herein

254.    The Middleborough Defendants, under color of law, have violated the Hometown

Plaintiffs' constitutionally protected property rights as secured under the Fourteenth Amendment

to the United States Constitution and 42 U.S.C. §1983.

255.    The Middleborough Defendants' intentional disparate treatment of the Hometown

Plaintiffs, and in particular, their discriminatory, arbitrary and capricious handling of the

Hometown Plaintiffs' Permits and the Proposed Scope of Work and Order/Fee Order, has denied

the Hometown Plaintiffs their right to equal protection of law.

256.    The Middleborough Defendants have intentionally and wrongfully singled out the

Hometown Plaintiffs for adverse treatment relating to their protectable and legitimate interests in

their property as identified herein.  This singling-out is particular evident in light of the Town's

past approval of Permits/licenses to the Oak Point Community's prior owner, without such a Do

Over, and without an extortionate demand that the prior owner pay for such a Do Over.  This

singling-out is also evident based on Board members' public statements regarding their

conclusions of the Hometown Plaintiffs' guilt and responsibility for presumed unsanitary

conditions without a trial.  The fact that Special Town Counsel Corbo has indicated that the

Proposed Scope of Work and Order/Fee Order would resolve itself if the Hometown Plaintiffs would just settle the *Craw* purported class action further demonstrates this discriminatory, arbitrary and capricious singling out of the Hometown Plaintiffs for unique punishment.  There is no rational basis for the difference in treatment between the Hometown Plaintiffs and their predecessor owners/managers of the Oak Point Community.

257.    This claim seeks declaratory and injunctive relief sufficient to restrain the enforcement of the Outside Consultant Statute, the Health Regulation Statute, and the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order themselves, for violating the equal protection clause of the United States Constitution.  The Hometown Plaintiffs also seek an award of the $16,590 that the Hometown Plaintiffs paid to the Town under protest. The Hometown Plaintiffs further seek an award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. §1988.

## COUNT 7

**(Declaratory Judgment That the Consultant Fee Rule and the Fee Order Issued Pursuant to the Consultant Fee Rule Are Invalid and Unenforceable Because the Statutes on Which They Are Based, M.G.L. c. 44, §53G and M.G.L. c. 111, §31, Do Not Authorize Municipal Boards of Health To Impose Fees for Consultants – Asserted Against All Middleborough Defendants)**

258.    The Hometown Plaintiffs hereby re-allege each and every allegation contained in paragraphs 1 through 257 as though fully set forth herein.

259.    Where a local authority wants to charge fees, it must rely on some legal authority to do so.

260.    The Board of Health promulgated the Consultant Fee Rule pursuant to M.G.L. c. 44, §53G and M.G.L. c. 111, §31.

261.     General Laws c. 44, §53G authorizes a local board to deposit any consultant fees it collects into a special account.

262.     General Laws c. 111, §31 authorizes local boards of health to adopt "reasonable health regulations."

263.     Neither M.G.L. c. 44, §53G nor M.G.L. c. 111, §31 authorizes local boards of health to impose fees for assistance provided to the board by consultants.

264.     The Board of Health exceeded its authority under M.G.L. c. 44, §53G and M.G.L. c. 111, §31 when it adopted the Consultant Fee Rule and issued the Fee Order.

265.     The Consultant Fee Rule and the Fee Order issued by the Board of Health pursuant to the Consultant Fee Rule are therefore invalid and unenforceable.

266.     An actual controversy exists between the parties as to whether M.G.L. c. 44, §53G and M.G.L. c. 111, §31 authorize local boards of health to impose fees for assistance provided to the board by consultants.

267.     The Hometown Plaintiffs have a definite interest in the controverted matter as their rights and obligations will be significantly affected by resolution of the controverted matter.

268.     All parties necessary to resolve the dispute are parties to this action.

269.     The Hometown Plaintiffs are entitled to (a) a declaration that the Consultant Fee Rule and the Fee Order issued pursuant to the Consultant Fee Rule are invalid and unenforceable because the statutes on which they are based, M.G.L. 44, §53G and M.G.L. c. 111, §31, do not authorize local boards of health to impose fees for consultants; and (b) an award of the $16,590 that they paid to the Town under protest.

## COUNT 8

**(Declaratory Judgment That the Fee Order is Invalid and Unenforceable
Because the Scope of Work On Which the Fee Order is Based
Exceeds the Scope of The Board of Health's Authority With Respect to
the Oak Point Community – Asserted Against All Middleborough Defendants)**

270.    The Hometown Plaintiffs hereby re-allege each and every allegation contained in
paragraphs 1 through 269 as though fully set forth herein.

271.    A local authority can only require a regulated entity to pay for fees associated
with work that falls within the scope of its specific authority and jurisdiction.

272.    The Fee Order issued by the Board of Health requires the Hometown Plaintiffs to
finance Tetra Tech's performance of the Phase I services outlined in the Proposed Scope of
Work and Order.  Those services concern the Oak Point Community's stormwater management
system and drainage issues at home sites.

273.    The Board of Health voted to engage Tetra Tech to perform the Phase I services
only after specifically confirming through a public interview, on July 27, 2020, that Tetra Tech's
consultants understood the matters at issue to be "all runoff or drainage issues," and that they
would look "almost exclusively" to the Massachusetts Stormwater Standards in performing their
services relative to the Oak Point Community.

274.    The Board of Health has no authority or jurisdiction over the Oak Point
Community's stormwater management system and/or "runoff or drainage issues."

275.    The Town of Middleborough's authority and jurisdiction over stormwater
management and drainage issues at the Oak Point Community, particularly as it relates to alleged
impacts on individual home sites,  has been vested with – and exercised by – the Middleborough
Planning Board, in its role as Special Permit Granting Authority.

276.     On information and belief, the Board of Health has failed to refer the instant issues concerning stormwater management and site drainage at the Oak Point Community to the Planning Board or to consult with the Planning Board on these matters.

277.     The scope of work on which the Fee Order is based exceeds the scope of the Board of Health's authority with respect to the Oak Point Community.

278.     The Board of Health exceeded its authority and jurisdiction over stormwater management and site drainage issues at the Oak Point Community when it issued the Fee Order.

279.     The Fee Order is therefore invalid and unenforceable.

280.     An actual controversy exists between the parties as to whether scope of work on which the Fee Order is based exceeds the scope of the Board of Health's authority with respect to the Oak Point Community.

281.     The Hometown Plaintiffs have a definite interest in the controverted matter as their rights and obligations will be significantly affected by resolution of the controverted matter.

282.     All parties necessary to resolve the dispute are parties to this action.

283.     The Hometown Plaintiffs are entitled to (a) a declaration that the Fee Order is invalid and unenforceable because the scope of work on which the Fee Order is based exceeds the scope of the Board of Health's authority with respect to the Oak Point Community; and (b) an award of the $16,590 that they paid to the Town under protest.

## COUNT 9

**(Declaratory Judgment That the Fee Order is Invalid and Unenforceable Because the Scope of Work On Which the Fee Order is Based Impermissibly Delegates Nondelegable Government Duties to a Private Third-Party – Asserted Against All Middleborough Defendants)**

284.     The Hometown Plaintiffs hereby re-allege each and every allegation contained in paragraphs 1 through 283 as though fully set forth herein.

285.     The Board of Health is statutorily authorized to inspect the Oak Point Community and to enforce the state Sanitary Code pursuant to M.G.L. c. 111, § 127A (State Sanitary Code – "local boards of health shall enforce said code") and M.G.L. c. 140, § 32C (Manufactured Housing Act – local boards of health "shall, from time to time, examine all … manufactured housing communities" to determine compliance with state Sanitary Code).

286.     The results of sanitary inspections have serious consequences.  They can be and are used and relied upon for purposes of governmental enforcement actions.  They can also have license renewal consequences for regulated entities.

287.     The only persons duly authorized and properly qualified to perform health and safety inspections and Sanitary Code enforcement services on behalf of municipalities are health agents and inspectors who are employed directly by such municipalities to provide such services.

288.     On information and belief, it is unprecedented for a municipal board of health to engage a third-party consultant, at an applicant's expense, to conduct a Sanitary Code enforcement inspection or perform a sanitary examination incident to the board's authority under the Manufactured Housing Act.

289.     The Board of Health's Sanitary Code inspection and related enforcement duties, including without limitation any sanitary examinations performed in connection with the Board of Health's authority under the Manufactured Housing Act, are nondelegable governmental duties that the Board of Health cannot shift to a private consulting firm.  To the extent the Fee Order requires the Hometown Plaintiffs to finance Tetra Tech's performance of inspections or examinations that may be used by the Board of Health to justify decisions about Sanitary Code compliance and/or enforcement, the Board of Health exceeded its authority when it issued the Fee Order.  The Fee Order is therefore invalid and unenforceable.

290.     An actual controversy exists between the parties as to whether the scope of work

on which the Fee Order is based impermissibly delegates nondelegable government duties to a

private third-party.

291.     The Hometown Plaintiffs have a definite interest in the controverted matter as

their rights and obligations will be significantly affected by resolution of the controverted matter.

292.     All parties necessary to resolve the dispute are parties to this action.

293.     The Hometown Plaintiffs are entitled to (a) a declaration that the Fee Order is

invalid and unenforceable because the scope of work on which the Fee Order is based

impermissibly delegates nondelegable government duties to a private third-party; and (b) an

award of the $16,590 that they paid to the Town under protest.

## COUNT 10

### (Certiorari – M.G.L. c. 249, §4 – Asserted Against All Middleborough Defendants)

294.     The Hometown Plaintiffs hereby re-allege each and every allegation contained in

paragraphs 1 through 293 as though fully set forth herein.

295.     The Hometown Plaintiffs complain of the Board of Health's July 27, 2020

decision to (a) appoint and engage Tetra Tech as the Board of Health's consultant, for purposes

of performing services in Phase I of the Proposed Scope of Work and Order concerning the Oak

Point Community; and (b) require, through the Fee Order, the Hometown Plaintiffs to finance

Tetra Tech's Phase I work by making payment to the Town, in the amount of $16,590, pursuant

to the recently-adopted Consultant Fee Rule.

296.     The Board of Health's decision rests on substantial errors of law which are

apparent on the record.

297.    The Consultant Fee Rule, pursuant to which Board of Health issued the Fee Order, applies only when there is an application pending before the Board of Health.

298.    No Hometown Plaintiff currently has an application pending before the Board of Health.  It was therefore substantial error for the Board of Health to issue the Fee Order.

299.    Pursuant to M.G.L. c. 44, § 53G, any fees imposed for the employment of a consultant to assist the Board of Health pursuant to the Consultant Fee Rule must be "reasonable."

300.    The $16,590 fee imposed on the Hometown Plaintiff by the Board of Health through the Fee Order is unreasonable because, as shown above, the scope of work on which the fee is based is unreasonable, unjustified, and duplicative of third-party consulting work already paid for by the Hometown Plaintiffs and/or their predecessors.  It was therefore substantial error for the Board of Health to issue the Fee Order.

301.    Pursuant to M.G.L. c. 44, § 53G, any consultant engaged to assist the Board of Health pursuant to the Consultant Fee Rule must have "an educational degree in or related to the field at issue or three or more years of practice in the field at issue or a related field."

302.    The Board of Health is statutorily authorized to inspect the Oak Point Community and to enforce the state Sanitary Code pursuant to M.G.L. c. 111, § 127A (State Sanitary Code – "local boards of health shall enforce said code") and M.G.L. c. 140, § 32C (Manufactured Housing Act - local boards of health "shall, from time to time, examine all … manufactured housing communities …" to determine compliance with state Sanitary Code).  The Board of Health is also authorized pursuant to M.G.L. c. 111, §122 to "examine into" nuisances that, in its opinion, are injurious to the public health.

303.    Any consultant chosen by the Board of Health to assess and report on the

conditions at the Oak Point Community must be qualified to determine not only whether and

where the complained-of conditions actually exist, but – critically – whether such conditions do

or do not violate the state's Sanitary Code or otherwise constitute a public nuisance.  Such

qualifications are essential, in light of (a) the scope of the Board of Health's specific authority

and jurisdiction; and (b) the nature of the resident complaints concerning water and drainage

issues at some Oak Point Community home sites.

304.    The results of sanitary inspections have serious consequences. They can be and

are used and relied upon for purposes of governmental enforcement actions. They can also have

license renewal consequences for regulated entities.

305.    The only persons who are duly authorized and properly qualified to perform

health and safety inspections and Sanitary Code enforcement services on behalf of municipalities

are health agents and inspectors who are employed directly by such municipalities to provide

such services.

306.    Apart from being employed as a municipal health agent or inspector, the required

qualifications for conducting a Sanitary Code inspection in Massachusetts typically do and

should include the following: (a) familiarity with and reference to the Minimum Standards of

Fitness of Human Habitation, 105 CMR 410.000; (b) participating in sanitary inspection training

courses, such as the Basic Housing Inspections course offered by the Boston University School

of Public Health, http://sphweb.bumc.bu.edu/otlt/housing/, and/or other relevant training

opportunities, such as those offered by as the Massachusetts Department of Public Health

Community Sanitation Program and the Local Public Health Institute of Massachusetts;

(c) receiving the benefits of active mentoring by an experienced health agent for a period of at

least six months; and (d) gaining substantial practical experience gained by assisting and accompanying more experienced health agents and inspectors in their Sanitary Code inspections.

307.    According to the Town of Middleborough's July 30, 2020 job posting for a new Health Officer to replace former Town Health Officer Robert Buker, the essential qualifications for the Health Officer position include the following: "[Must] be certified as a Registered Sanitarian, Soil Evaluator, Septic Inspector, Food Service, Housing and Pool Operator. Prefer relevant Master's Degree and Certified Health Officer."

308.    No member of the Tetra Tech Team appointed by the Board of Health to perform services relating to the Oak Point Community is a municipal health agent or inspector, according to the information presented by Tetra Tech to the Board of Health as of July 24, 2020.

309.    According to the information presented by Tetra Tech to the Board of Health as of July 24, 2020, no member of the Tetra Tech team has demonstrated (a) familiarity with and reference to the Minimum Standards of Fitness of Human Habitation, 105 CMR 410.000; (b) participation in sanitary inspection training courses, or other relevant training opportunities; (c) receipt of the benefits of active mentoring by an experienced health agent for a period of at least six months; and (d) substantial practical experience gained by assisting and accompanying experienced health agents and inspectors in their Sanitary Code inspections.

310.    With the sole exception of Sara White's reported qualification as an approved Soil Evaluator, no member of the Tetra Tech Team is a Registered Sanitarian, Soil Evaluator, Septic Inspector, Food Service, Housing and Pool Operator, and none has a relevant Master's Degree and or is a Certified Health Officer, according to the information presented by Tetra Tech to the Board of Health as of July 24, 2020.

311.    No member of the Tetra Tech Team claims to be qualified to conduct a Sanitary Code inspection of any home site or other location within the Oak Point Community, according to the information presented by Tetra Tech to the Board of Health as of July 24, 2020.

312.    No member of the Tetra Tech team has, or claims to have, specific expertise with the interpretation and application of the requirements of the Sanitary Code with respect to complaints about water in the crawl spaces of manufactured homes, according to the information presented by Tetra Tech to the Board of Health as of July 24, 2020.

313.    No member of the Tetra Tech team has, or claims to have, any experience in the performance of inspections under the Massachusetts Manufactured Housing Act, according to the information presented by Tetra Tech to the Board of Health as of July 24, 2020.

314.    No member of the Tetra Tech team has, or claims to have, specific expertise with the interpretation and application of the requirements of the Massachusetts Manufactured Housing Act, either for licensing or for enforcement purposes, according to the information presented by Tetra Tech to the Board of Health as of July 24, 2020.

315.    No member of the Tetra Tech team has, or claims to have, a clear and reliable understanding of how specific responsibilities for compliance with the requirements of the Sanitary Code applicable to "dwelling units" are allocated, as between the owner of a manufactured housing community and the resident owners of the manufactured homes that are located within such a community, respectively, according to the information presented by Tetra Tech to the Board of Health as of July 24, 2020.

316.    The members of the Tetra Tech Team are not qualified to perform the essential health and safety inspection and Sanitary Code enforcement services which are core responsibilities of the Health Officer of the Middleborough Health Department.

317.     The members of the Tetra Tech Team lack the essential qualifications necessary to provide services to the Board of Health with respect to Oak Point's compliance with (a) the requirements of the Massachusetts Sanitary Code; (b) the requirements of the Massachusetts Manufactured Housing Act and its implementing regulations; and/or (c) any other requirement over which the Board of Health has legal authority and jurisdiction over Oak Point.

318.     It was therefore substantial error for the Board of Health to (a) appoint and engage Tetra Tech as the its consultant, for purposes of performing services in Phase I of the Proposed Scope of Work and Order concerning the Oak Point Community; and (b) require, through the Fee Order, the Hometown Plaintiffs to finance Tetra Tech's Phase I work.

319.     The Hometown Plaintiffs have no other adequate remedy at law.

320.     The Hometown Plaintiffs will suffer substantial injury or injustice if the Board of Health's decision is not vacated.

321.     The Hometown Plaintiffs are entitled to certiorari relief from the Board of Health's decision to (a) appoint and engage Tetra Tech as the Board of Health's consultant, for purposes of performing services in Phase I of the Proposed Scope of Work and Order concerning the Oak Point Community; and (b) require, through the Fee Order, the Hometown Plaintiffs to finance Tetra Tech's Phase I work by making payment to the Town, in the amount of $16,590, pursuant to the recently-adopted Consultant Fee Rule.

## COUNT 11

### (Appeal Pursuant to M.G.L. c. 140, §32K – Asserted Against All Middleborough Defendants)

322.     The Hometown Plaintiffs hereby re-allege each and every allegation contained in paragraphs 1 through 321 as though fully set forth herein.

323.    Under the Manufacturing Housing Act, M.G.L. c. 140, §§32A through 32S, the Board of Health is the licensing authority for the operation of the Oak Point Community.

324.    Massachusetts General Laws c. 140, §32K gives "[a]ny person aggrieved by any act, rule, order or decision of the licensing board" the right to appeal the decision.

325.    The Hometown Plaintiffs complain of, and are aggrieved by, the Board of Health's (a) promulgation of the Consultant Fee Rule; (b) decision and acts to appoint and engage Tetra Tech as the Board of Health's consultant, for purposes of performing services in Phase I of the Proposed Scope of Work and Order concerning the Oak Point Community; and (c) issuance of the Fee Order compelling the Hometown Plaintiffs to finance Tetra Tech's Phase I work by making payment to the Town, in the amount of $16,590, pursuant to the recently-adopted Consultant Fee Rule.

326.    The facts alleged show that the Consultant Fee Rule and the Fee Order issued pursuant to the Consultant Fee Rule are invalid and unenforceable because neither of the two statutes on which that Rule and Order are based, *i.e.*, the Outside Consultants Statute (M.G.L. 44, §53G) and the Health Regulation Statute (M.G.L. c. 111, §31), authorizes municipal boards of health to impose fees for consultants.

327.    The facts alleged show that the Fee Order is invalid and unenforceable because the scope of work on which the Fee Order is based exceeds the scope of the Board of Health's authority with respect to the Oak Point Community.

328.    The facts alleged show that the Fee Order is invalid and unenforceable because the scope of work on which the Fee Order is based impermissibly delegates nondelegable government duties to a private third-party.

329.    The facts alleged show that no Hometown Plaintiff currently has an application pending before the Board of Health.  It was therefore error for the Board of Health to issue the Fee Order.

330.    The facts alleged show that the $16,590 fee imposed on the Hometown Plaintiffs by the Board of Health through the Fee Order is unreasonable because the scope of work on which the fee is based is unreasonable, unjustified, and duplicative of third-party consulting work already paid for by the Hometown Plaintiffs and/or their predecessors.  It was therefore error for the Board of Health to issue the Fee Order.

331.    The facts alleged show that the members of the Tetra Tech Team are not qualified to perform the essential health and safety inspection and Sanitary Code enforcement services which are core responsibilities of the Health Officer of the Middleborough Health Department.

332.    The facts alleged show that the members of the Tetra Tech Team lack the essential qualifications necessary to provide services to the Board of Health with respect to Oak Point's compliance with (a) the requirements of the Massachusetts Sanitary Code; (b) the requirements of the Massachusetts Manufactured Housing Act and its implementing regulations; and/or (c) any other requirement over which the Board of Health has legal authority and jurisdiction over Oak Point.

333.    It was error for the Board of Health to (a) promulgate the Consultant Fee Rule; (b) appoint and engage Tetra Tech as its consultant, for purposes of performing services under Phase I of the Proposed Scope of Work and Order concerning the Oak Point Community; and (c)  require, through the Fee Order, the Hometown Plaintiffs to finance Tetra Tech's Phase I work.

334.     The Hometown Plaintiffs are entitled to a judicial decision and order pursuant to

M.G.L. c. 140, § 32K, directing the Board of Health to (a) rescind its Consultant Fee Rule;

(b) rescind its appointment and engagement of  Tetra Tech as its consultant, for purposes of

performing services in Phase I of the Proposed Scope of Work and Order concerning the Oak

Point Community; and (c) vacate its Fee Order compelling the Hometown Plaintiffs to finance

Tetra Tech's Phase I work by making payment to the Town, in the amount of $16,590, pursuant

to the recently-adopted Consultant Fee Rule; and further granting such other relief consistent

with and in furtherance of such judicial decision and order.


## **PRAYER FOR RELIEF**

WHEREFORE, the Hometown Plaintiffs respectfully request relief as follows:

A.  A declaration that the Outside Consultant Statute and the Consultant Fee Rule, as

applied to the Hometown Plaintiffs through the Proposed Scope of Work and

Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order themselves,

violate the unconstitutional conditions doctrine, the monetary exactions doctrine, and

the Takings Clause of the United States Constitution, and are therefore invalid and

unenforceable as to the Hometown Plaintiffs;

B.  A declaration that the Outside Consultant Statute and the Consultant Fee Rule, both

on their face and as applied to the Hometown Plaintiffs through the Proposed Scope

of Work and Order/Fee Order, and the Proposed Scope of Work and Order and Fee

Order, are unconstitutional because they violate procedural due process protections

required by the United States Constitution, and thus the Outside Consultant Statute,

the Consultant Fee Rule, the Proposed Scope of Work and Order, and the Fee Order
are invalid and unenforceable;

C.  A declaration that the Outside Consultant Statute, the Health Regulation Statute, and
the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed
Scope of Work and Order and Fee Order, and the Proposed Scope of Work and Order
and Fee Order themselves, are unconstitutional because they violate substantive due
process protections required by the United States Constitution, and thus the Outside
Consultant Statute, the Health Regulation Statute, and the Consultant Fee Rule, as
applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order,
and the Proposed Scope of Work and Order/Fee Order themselves, are invalid and
unenforceable as to the Hometown Plaintiffs;

D.  A declaration that the Outside Consultant Statute, the Health Regulation Statute, and
the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed
Scope of Work and Order/Fee Order, and the Proposed Scope of Work and Order/Fee
Order themselves, have violated the Equal Protection Clause of the United States
Constitution, and thus the Outside Consultant Statute, the Health Regulation Statute,
the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed
Scope of Work and Order/Fee Order, and the Proposed Scope of Work and Order and
Fee Order themselves, are invalid and unenforceable as to the Hometown Plaintiffs;

E.  A declaration that the Outside Consultant Statute, the Health Regulation Statute, and
the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed
Scope of Work and Order and Fee Order, and the Proposed Scope of Work and Order
and Fee Order themselves, violate the Excessive Fines Clause of the Eighth

Amendment to the United States Constitution and of the Massachusetts Declaration of Rights, and thus the Outside Consultant Statute, the Health Regulation Statute, and the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Fee Order and the Proposed Scope of Work and Order, and the Proposed Scope of Work and Order and Fee Order, are invalid and unenforceable as to the Hometown Plaintiffs;

F.  A declaration that the Outside Consultant Statute, the Health Regulation Statute, and the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order, and the Proposed Scope of Work and Order/Fee Order themselves, are unconstitutional Bills of Attainder because they violate Art. I, §10 of the United States Constitution, and thus the Outside Consultant Statute, the Health Regulation Statute, and the Consultant Fee Rule, as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order/Fee Order, and the Proposed Scope of Work and Order and Fee Order themselves, are invalid and unenforceable as to the Hometown Plaintiffs;

G.  An injunction preliminarily and permanently enjoining the Middleborough Defendants from enforcing the Outside Consultant Statute and the Consultant Fee Rule, both on their face and as applied to the Hometown Plaintiffs, and permanently enjoining the Middleborough Defendants from enforcing the Health Regulation Statute as applied to the Hometown Plaintiffs through the Proposed Scope of Work and Order and the Fee Order, and preliminarily and permanently enjoining the Middleborough Defendants from enforcing the Proposed Scope of Work and Order and Fee Order themselves;

H.  A declaration that the Consultant Fee Rule and the Fee Order issued pursuant to the Consultant Fee Rule are invalid and unenforceable because the statutes on which they are based, M.G.L. 44, §53G and M.G.L. c. 111, §31, do not authorize local boards of health to impose fees for consultants;

I.  A declaration that the Fee Order is invalid and unenforceable because the scope of work on which the Fee Order is based exceeds the scope of the Board of Health's authority with respect to the Oak Point Community;

J.  A declaration that the Fee Order is invalid and unenforceable because the scope of work on which the Fee Order is based impermissibly delegates nondelegable government duties to a private third-party;

K.  A decision and order directing the Board of Health to (a) rescind *ab initio* its Consultant Fee Rule; (b) rescind *ab initio* its appointment and engagement of Tetra Tech as its consultant, for purposes of performing services in Phase I of the Proposed Scope of Work and Order concerning the Oak Point Community; and (c) vacate its Fee Order compelling the Hometown Plaintiffs to finance Tetra Tech's Phase I work by making payment to the Town, in the amount of $16,590;

L.  An award of $16,590, the amount that the Hometown Plaintiffs paid to the Town under protest;

M.  An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. §1988; and

N.  All other and further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted this 25th day of September, 2020.

HOMETOWN AMERICA, LLC; HOMETOWN AMERICA MANAGEMENT, LLC; HOMETOWN OAK POINT I, LLC; AND HOMETOWN OAK POINT II, LLC

By its attorneys,

*/s/ Lisa C. Goodheart*_____
Lisa C. Goodheart (BBO No. 552755)
goodheart@sugarmanrogers.com
Andrea Studley Knowles (BBO No. 640632)
knowles@sugarmanrogers.com
Tristan P. Colangelo (BBO No. 682202)
colangelo@sugarmanrogers.com
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street, Suite 900
Boston, MA 02114-4737
(617) 227-3030


OF COUNSEL:

W. Scott Simpson (*Pro Hac Vice Motion to be submitted*)
wsimpson@smgblawyers.com
SIMPSON, MCMAHAN, GLICK & BURFORD, PLLC
2700 Highway 280, Suite 203W
Birmingham, AL 24112
(205) 876-1600

Lee E. Bains, Jr. (*Pro Hac Vice Motion to be submitted*)
lbains@maynardcooper.com
Thomas W. Thagard (*Pro Hac Vice Motion to be submitted*)
tthagard@maynardcooper.com
Lorrie L. Hargrove (*Pro Hac Vice Motion to be submitted*)
lhargrove@maynardcooper.com
James C. Lester (*Pro Hac Vice Motion to be submitted*)
jlester@maynardcooper.com
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
(205) 254-1000